Robert Amos **MORRIS**, Appellant,

v.

**STATE of Alaska, Appellee.**

No. 1063.

Supreme Court of Alaska.

Aug. 21, 1970.

James C. Merbs, Anchorage, for appellant.

G. Kent Edwards, Atty. Gen., and Edmond W. Burke, Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

CONNOR, Justice.

Defendant is appealing his conviction for the unlawful possession of a narcotic drug, in the form of heroin.

At some time before July 30, 1968, the Anchorage Police Department, through one of its officers, Brian Porter, had contact with one Judy Patton. She told Officer Porter about a cache of heroin which was located in a wooded area in Anchorage. Upon setting up surveillance of the area, the police a few days later arrested Judy Patton herself, along with two others, when she attempted to take possession of this cache. This occurred on July 28, 1968. While she was in jail, Judy Patton informed the police that she lived with appellant at a duplex apartment in Anchorage. She also stated that heroin could be located there.

Officer Porter applied for a search warrant, and filed a supporting affidavit in which he detailed the information related

to him by Judy Patton. Her reliability as an informant was based upon the fact that the previous information she had given the police about the cache of narcotics in the wooded area had been accurate. On July 30, 1968, the search warrant was issued, specifying the residence of appellant Robert A. Morris as the place to be searched, and permitting search for narcotic drugs in the specific form of heroin. On the same day Officer Porter, accompanied by Officer Dias of the Anchorage Police Department, and a customs officer named Watson, all proceeded to the Morris residence. At the time the officers arrived, about 2:30 in the afternoon, appellant was in bed asleep. While Morris dressed in the living room, Officer Porter proceeded to search the bedroom, finding a paper packet containing powder under the mattress of his bed. The packet was brought to the living room, marked, and a field test for the presence of opiates was performed. The test was positive. Officer Porter further testified that after performing this test, he placed Morris under arrest. Thereafter Porter continued his search, discovering another paper packet in the closet area, the location which had been indicated by Judy Patton as a hiding place for heroin. A third item, a bottle with a label indicating that it contained cocaine, was discovered.

At the time that each of these objects was found, certain questions were directed to appellant. Upon finding the first paper packet under the mattress, Porter testified that he asked Morris whether there were more narcotic drugs in the residence, and that he said "No." After finding the second paper packet in the closet area, Porter testified that he again asked Morris whether there were any more on the premises and Morris replied, "No, this time you have it all." After finding the bottle apparently containing cocaine, a similar question was put to Morris, and he said that he had forgotten about it.

A Miss Topkock was present on the premises and was searched with her consent. At one point during the search of the premises, appellant made the statement concerning Miss Topkock that "She didn't have anything to do with this. She knew nothing about it." This statement was made at a time when Officer Porter was in the bedroom, and appellant was in the living room with Miss Topkock and Agent Watson. The record indicates that the statement was not in response to any question put to appellant by anyone.

At trial, evidence of these statements was elicited by the prosecution during the direct examination of Officer Porter and Agent Watson. Defense counsel moved to exclude the evidence concerning these statements on the ground that Morris was not free to leave when the officers arrived at the premises, that the search and questioning were tantamount to custodial interrogation and, as such, Morris should have been given the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defense counsel moved to strike the testimony concerning these statements, which motion was granted as to all of the statements with the exception of the statement about Miss Topkock's innocence. The court also instructed the jury to disregard the testimony about these statements with the exception of the statement attributed to appellant in which he attempted to exonerate Miss Topkock. Based largely on these trial occurrences and certain other claims, appellant now asks for reversal of his conviction on appeal.

■ A number of claims of error have been examined by us, but we find them insufficient under the authorities relied upon.[1] For example, Judy Patton was

1. It should be noted that counsel for appellant had some doubts about the merits of this appeal, and so advised the trial court and this court. We directed him to file a brief referring to anything in the record that might arguably support the appeal, in accordance with the requirements of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and McCracken v. State, 439 P.2d

called to the witness stand. She invoked her privilege against self-incrimination and refused to offer testimony. Appellant claims that this violated his Sixth Amendment right to confrontation by the witnesses against him, citing Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L. Ed.2d 639 (1957), Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L. Ed.2d 934 (1965). None of these cases are apposite. Appellant was confronted with the witnesses against him by the appearance in court and on the witness stand of Officer Porter and Agent Watson. We do not believe that further discussion of these authorities and their applicability to this case is warranted.

Appellant's second specification of error is that there was no probable cause for the search warrant to issue and, therefore, the narcotics which were seized should have been excluded from evidence.

■ In determining the validity of a search warrant, a reviewing court may consider only information brought to the issuing magistrate's attention. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ In *Aguilar,* supra, the United States Supreme Court established certain tests for determining whether a warrant was issued upon probable cause. First, "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, * * *" 378 U.S., at 114, 84 S.Ct., at 1514. Second, "the magistrate must be informed of some of the underlying circumstances from which the officer concluded that the in-

formant, whose identity need not be disclosed * * * was 'credible' or his information 'reliable.'" 378 U.S., at 114, 84 S.Ct., at 1514. Here, both of these elements were satisfied. Affiant Porter swore that he had received information from a reliable informant who had personal knowledge that appellant had narcotic drugs at his residence. His affidavit set forth the underlying circumstances from which he concluded that the informant was reliable: that certain information which she had given him, including that about the existence of a cache of drugs, had been verified by him as being true. The search warrant was sufficient and the evidence obtained thereunder was properly admitted.

The balance of the appeal centers around the admission into evidence of appellant's statements made during the search and in response to questions by Officer Porter, although some of these statements were later stricken upon motion by appellant, and the jury was instructed to disregard them.

■■ The only statement by appellant left in evidence was his reference to Miss Topkock being uninvolved in the possession of narcotics. This statement was not in response to any question put to appellant by Officer Porter. It was made in the presence of Agent Watson, who had not directed any questions to appellant. Officer Porter was not in the room when the statement was made. We do not find here that coercive atmosphere of custodial interrogation which is prohibited by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). The statement appears to be wholly unsolicited by either the questioning or conduct of the officers. Volunteered statements are not prohibited by the *Miranda* rule. State v. Little,

448 (Alaska 1968). After the "Anders brief" was filed, we directed counsel to file a brief on appeal setting forth any arguable specifications of error and legal argument in support thereof.

201 Kan. 94, 439 P.2d 387 (1968); Stone v. State, 442 P.2d 519 (Okl.Cr.1968).

We find no other substantial claim of error.

Affirmed.