## TISCHLER v. STATE
[No. 81, October Term, 1954.]

*Decided February 21, 1955.*

The cause was argued before BRUNE, C. J. and DELA-PLAINE, COLLINS, HENDERSON AND HAMMOND, JJ.

*Allan H. Murrell,* for appellant.

*James H. Norris, Jr.,* Assistant Attorney General, with whom were *C. Ferdinand Sybert,* Attorney General, *Anselm Sadaro,* State's Attorney for Baltimore City, and *Edwin A. Gehring,* Assistant State's Attorney, on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Frank Joseph Tischler, a resident of Baltimore, appealed here from his convictions in the Criminal Court of Baltimore on two indictments charging violations of the statute prohibiting bookmaking on horse races, Code 1951, art. 27, sec. 306, and on one indictment charging violations of the statute prohibiting lotteries, Code 1951, art. 27, sec. 423.

On March 17, 1954, Lieut. Joseph J. Byrne, of the Baltimore City Police Department, presented to Judge Joseph L. Carter, of the Supreme Bench of Baltimore City, an affidavit alleging that there was probable cause to believe that the law against bookmaking was being violated in the three-story brick dwelling, with store front, at 1300 East Chase Street on the northeast corner of Chase Street and Central Avenue, and also in the Plymouth sedan titled in the name of Lawrence J. Lyng, Sr., 4637 Kernwood Avenue. The lieutenant applied for a warrant to enter and search the house and the automobile, and to arrest the two white men described in the affidavit and all other persons found on the premises and in the automobile who were actively engaged in bookmaking activities; to search the pockets of the clothing of all such persons; and to seize all paraphernalia and

money used in gambling on horse races.

The affidavit alleged that on the morning of March 15 Officer William Hogan went to the vicinity of Harford Avenue and Federal Street and observed a man, about 48 years old, get out of a sedan and enter a luncheonette, and come out a few minutes later carrying a scratch sheet, and then drive to 1300 East Chase Street, where he unlocked the door and entered.

The affidavit further alleged that on the afternoon of March 15 Officer Hogan observed a man, about 40 years old, walking on Central Avenue, and when he reached the side door of the building at 1300 East Chase Street, he stopped and glanced about suspiciously and tapped lightly on the door. The door opened slightly and then wide enough to let him in.

The affidavit further alleged that on March 16 Officer Hogan observed the younger man standing on the corner of Harford Avenue and Federal Street studying a scratch sheet, and three men approached at intervals and glanced at the scratch sheet and handed him some money. He then entered a luncheonette, and shortly afterwards the older man appeared, and the younger man gave the older man some money, whereupon the older man drove back to 1300 East Chase Street.

The affidavit further alleged that on the morning of March 17 Officer George Fink went to the vicinity of the house at 1300 East Chase Street, and at about 11 a. m. he saw the older man walk to the Central Avenue side of the house, unlock the door and enter the house.

Acting upon Lieut. Byrne's application, Judge Carter issued a search warrant commanding him, with the necessary and proper assistants, to search the house at 1300 East Chase Street and the Plymouth automobile, and to make proper seizures and arrests.

On the afternoon of March 17 Lieut. Byrne, armed with the search warrant and accompanied by other officers of the Police Department, forced open the side door of the house at 1300 East Chase Street, and in a rear room they found Lawrence J. Lyng, Jr., sitting at

a table with an Armstrong scratch sheet and two pieces of paper in front of him, making notations on one of them. The officers found 23 race horse slips containing 165 bets indicating a total of $390 bet, and 52 lottery tickets indicating a total of $105.52 bet. The slips and lottery tickets were dated March 15, 16 and 17.

The officers then went to the second floor, where they arrested and searched appellant. They found in his shirt pocket two race horse slips, one dated March 15, the other dated March 17.

Appellant and Lyng were jointly charged in all three indictments. Prior to his arraignment, appellant filed a motion to quash the search warrant and to suppress the evidence obtained thereunder. The ground of the motion was that the allegations in Lieut. Byrne's affidavit concerning the observations that were made by Officers Hogan and Fink, intended to show probable cause, were "completely false and fictitious." Attached to the motion were affidavits of a number of persons that definitely contradicted the allegations. As we have seen, Lieut. Byrne's affidavit alleged that Officer Hogan saw Lyng on March 15 at 1300 East Chase Street, whereas appellant's affiants swore that he was in his home on Kernwood Avenue on that day until 11 a. m., then in a delivery truck from 12:40 to 1:30 p.m., and then in an office at 2 East Read Street from 2:15 until 3:30 p. m. Other affiants contradicted the allegations of the police officers as to Lyng's whereabouts on March 16 and 17.

Judge Niles overruled appellant's motion. Appellant then elected to be tried before the Court without a jury. He thus obtained a severance from Lyng in all three cases.

At the conclusion of the testimony, appellant again made a motion to quash, and again his motion was overruled. Judge Niles found appellant guilty on the first, second and fourth counts of the first two indictments, and guilty on the third and fifth counts of the third indictment, and sentenced him in each case to be imprisoned in the Maryland House of Correction for the

term of six months and to pay a fine of $1,000, the sentences to run concurrently.

There is no question of the law that before a judge can issue a search warrant, it must be founded on an affidavit of the applicant that shows facts and circumstances which would, to any reasonable mind, justify the belief that the execution of the warrant would result in a verdict of guilty. If the affidavit does not show probable cause for the issuance of the warrant, a prosecution based on the warrant and the facts unearthed in the execution cannot supply the deficiencies antecedent to the warrant, and the prosecution fails before it is begun. *Goodman v. State,* 178 Md. 1, 11 A. 2d 635.

Appellant, however, earnestly contended that the Court should not have overruled his motion to quash the search warrant because the allegations in the application for the warrant were completely contradicted by his motion and the accompanying affidavits. We must reject his contention because the law was established in 1948 by our decision in the case of *Smith v. State,* 191 Md. 329, 335, 62 A. 2d 287, 5 A. L. R. 2d 386, certiorari denied 336 U. S. 925, 69 S. Ct. 656, 93 L. Ed. 1087, that if the affidavit that forms the basis for the issuance of a search warrant is sufficient on its face, any question as to whether the affidavit showed probable cause is confined to the affidavit itself, and on a motion to quash the search warrant on the ground of lack of probable cause, no testimony can be received to contradict the truth of the allegations in the affidavit.

Appellant urged that we should abrogate this rule because it encourages police officers to make false statements under oath. But the rule which was adopted by this Court in 1948 was reaffirmed in 1951 in *Goss v. State,* 198 Md. 350, 354, 84 A. 2d 57; again in 1952 in *Adams v. State,* 200 Md. 133, 139, 88 A. 2d 556; and again in 1953 in *Harris v. State,* 203 Md. 165, 172, 99 A. 2d 725. Accordingly we again assert that the rule is so firmly established in Maryland that it should not be changed by a decision of this Court. We also take oc-

casion to say that this rule has been generally followed in other States. *State v. Seymour*, 46 R. I. 257, 126 A. 755; *Commonwealth v. Thacker*, 229 Ky. 488, 17 S. W. 2d 399; *People v. Alvis*, 342 Ill. 460, 174 N. E. 527; *Elms v. State*, 114 Tex. Cr. R. 642, 26 S. W. 2d 211; *Piper v. State*, 116 Tex. Cr. R. 378, 34 S. W. 2d 283; *Goss v. State*, 187 Miss. 188, 192 So. 494.

In *Smith v. State*, 191 Md. 329, 339, 62 A. 2d 287, 291, *supra*, Judge Collins pointed out that any person making a false affidavit to obtain a search warrant is liable to criminal prosecution, and mentioned that Article 27, Section 307, of the 1939 Code (Section 329 of the 1951 Code) expressly declared that the Perjury Act shall apply to all persons who make oath to an application for a search warrant.

Appellant finally argued that there was significance in the fact that Section 329 of Article 27 of the 1951 Code has been repealed by the Legislature. It is true that Section 329 was repealed in 1953, but we cannot find any merit in appellant's argument. The repeal was the result of the recommendation of a Commission appointed by Governor McKeldin, in accordance with a Joint Resolution adopted by the Legislature in 1952, to revise the criminal laws of the State in order to remove obsolete and outmoded provisions and to make the criminal laws briefer and more orderly. The Commission recommended the repeal of a series of laws that had become inapplicable and no longer necessary. Among the section of Article 27 found by the Commission to be obsolete was Section 329. This section was repealed by Chapter 411 of the Laws of 1953.

It is evident that the Legislature considered Section 329 to be superfluous in view of the fact that the subject is adequately covered by the Perjury Act. This Act provides that an oath willfully and falsely made shall be deemed to be perjury (1) in all cases where false swearing would be perjury at common law, and (2) in all affidavits required to be taken by law * * *. Code 1951, art. 27, sec. 531. It is, of course, beyond question

that if an applicant for a search warrant willfully makes a false statement in his affidavit, he can be prosecuted under the Perjury Act. Accordingly Chapter 411 of the Laws of 1953 does not constrain us to abrogate the challenged rule.

As appellant failed to show that the search warrant issued in this case was invalid, the trial judge ruled correctly in refusing to quash it and in admitting in evidence the gambling paraphernalia seized under it. The judgments of conviction will therefore be affirmed.

*Judgments affirmed, with costs.*