STATE of Alaska, Petitioner,

v.

Casey L. JONES, Respondent.

No. S–486.

Supreme Court of Alaska.

Sept. 20, 1985.

---

David Mannheimer, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner.

Fleur Roberts, Law Offices of Dick L. Madson, for respondent.

Before RABINOWITZ, C.J., and MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Casey Jones was convicted of possession of cocaine, AS 17.10.010, and tampering with physical evidence, AS 11.56.610(a)(4). On appeal, he contended that the police obtained the evidence against him by an illegal search and seizure in violation of his rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution. He claimed that the search was illegal because the search warrant was not based on a sufficient showing of probable cause. The court of appeals agreed with Jones and reversed his conviction. *Jones v. State,* 681 P.2d 364 (Alaska App.1984). We affirm the court of appeals' decision under Article I, Section 14 and Article I, Section 22 of the Alaska Constitution.[1]

## I. FACTS AND PROCEEDINGS

Based on information obtained from a juvenile that defendant Casey Jones was selling cocaine, the Fairbanks police applied for a warrant to search Jones' apartment. The affidavit supporting the warrant application contained the following statement:

1. That your affiant is a detective with the City of Fairbanks Police Department.

2. That B.V., a juvenile, whose name may be obtained through proper motion to the court, told your affiant that on June 12, 1982, B.V. went with

---

1. Article I, Section 14 provides:

   Searches and Seizures. The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched and the persons or things to be seized.

   Article I, Section 22 provides in part:

   Right of Privacy. The right of the people to privacy is recognized and shall not be infringed.

another individual to Casey Jones' apartment located in Story Apartments at 119 Bridget Street in Fairbanks where B.V.'s companion purchased one half gram of cocaine.

3. B.V. stated to your affiant that he has been to Jones' apartment ten to fifteen times when he or his companions have purchased cocaine from Jones in the past few months.

4. That B.V. pointed out the entrance to Jones' apartment as the door on the northwest corner of the building at 119 Bridget Street, a multi-unit apartment building, said door leading down to Jones' apartment. The name Story Apartments appears on the front of the building. B.V. stated that Jones has a set of triple-beam scales that he uses for measuring cocaine in the apartment.

5. Officer Frank Colletta of the Metro Unit in Fairbanks told your affiant today that the entrance as described by B.V. is the entrance to Casey L. Jones' apartment.

6. That in my experience with the Metro Unit in Fairbanks, records of drug transactions, substantial U.S. currency and drug paraphernalia are often present in the residences of persons who sell cocaine.

7. Your affiant has eighteen months experience investigating drug cases with Metro Team, Fairbanks.

After the execution of this search warrant, Jones was indicted for possession of cocaine, sale of cocaine and tampering with physical evidence. He was subsequently convicted of possession of cocaine and tampering with physical evidence. The court of appeals reversed his conviction, because it believed that the affidavit provided insufficient information "to enable a magistrate to independently determine probable cause under either current federal law, *see Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), or former law as enunciated in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)." *Jones* at 365.

## II. THE *GATES* TOTALITY OF THE CIRCUMSTANCES APPROACH

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, the magistrate issued a search warrant based on the following affidavit:

Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbituates and other narcotic and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.

*Id.* at 109, 84 S.Ct. at 1511, 12 L.Ed.2d at 725. The Supreme Court reversed the defendant's conviction because the affidavit did not provide a sufficient basis for a finding of probable cause. The Court required that:

The magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant ... was "credible" or his information "reliable".

*Id.* at 114–15, 84 S.Ct. at 1513–14, 12 L.Ed.2d at 729. Therefore, the two-pronged test required that the affidavit establish (1) the informant's basis of knowledge, and (2) the informant's credibility or the reliability of his information.

The U.S. Supreme Court modified the *Aguilar* test in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. For the first prong requiring basis of knowledge, the Court allowed some detailed tips from informants to be self-verifying.

In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on

something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

*Id.* at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644. In addition, independent police corroboration of details in the informant's tip could establish the informant's credibility or the reliability of his information under the second prong. *Id.* at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

■ In construing provisions of the Alaska Constitution similar to the United States Constitution, we give careful consideration to the holdings of the United States Supreme Court, although we are not bound by them. *State v. Glass,* 583 P.2d 872, 876 (Alaska 1978). Thus, we have followed the *Aguilar-Spinelli* analysis in cases involving both the Fourth Amendment and Article I, Section 14 of the Alaska Constitution. *See, e.g., Keller v. State,* 543 P.2d 1211 (Alaska 1975) (adopting under our state constitution *Aguilar-Spinelli*'s requirement that an affidavit establish both informant's basis of knowledge and his veracity), *Harrelson v. State,* 516 P.2d 390, 394–95 (Alaska 1973) (rejecting in part *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) and requiring affidavit to specify the underlying circumstances to allow a magistrate to independently assess an informant's veracity).

■ In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the *Aguilar-Spinelli* two-pronged test in favor of a "totality of the circumstances" approach. Under this approach,

[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

103 S.Ct. at 2332, 76 L.Ed.2d at 548. The sole task of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id.* The state asks us to apply the *Gates* test under the state as well as the federal constitution to uphold the search warrant in this case. We decline this request. As the Washington Supreme Court stated regarding the *Gates* test:

Prior reliance on federal precedent and federal constitutional provisions [does] not preclude us from taking a more expansive view of [the state constitution] where the United States Supreme Court determines to further limit federal guaranties in a manner inconsistent with our prior pronouncements.

*State v. Jackson,* 102 Wash.2d 432, 688 P.2d 136, 140–41 (1984).[2] Similarly, we may construe Alaska's constitutional provisions such as Article I, Section 14 as affording additional rights to those granted by the United States Supreme Court under the federal constitution. *State v. Glass,* 583 P.2d at 876 n. 12.

The Supreme Court offered several reasons for abandoning the *Aguilar-Spinelli* test. The Court asserted (1) that probable cause is a fluid concept involving an assess-

2. In *Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548 (1985), the Supreme Judicial Court decided that the test for determining probable cause should be stricter under article 24 of the Declaration of Rights of the Massachusetts Constitution than under the Fourth Amendment. Consequently, the court concluded:

We reject the "totality of the circumstances" test now espoused by a majority of the United States Supreme Court [in *Gates* ]. That standard is flexible, but it is also "unacceptably shapeless and permissive." ... The Federal test lacks the precision we believe can and should be articulated in stating a test for determining probable cause.

*Id.* at 556 (citation omitted). The court reasoned that the principles developed under *Aguilar* and *Spinelli,* "if not applied hypertechnically, provide a more appropriate structure for probable cause inquiries" under the Massachusetts Constitution. *Id.*

*See also People v. Campa,* 36 Cal.3d 870, 206 Cal.Rptr. 114, 686 P.2d 634, 638–39 (1984) (court follows *Aguilar*'s two-pronged test under California Constitution).

ment of probabilities in a particular factual context, rather than a neat set of legal rules, 103 S.Ct. at 2328, 76 L.Ed.2d at 544; (2) that the "basis of knowledge" and "veracity" elements of the *Aguilar-Spinelli* test should not be accorded independent status "so that a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability," *id.* at 2329, 76 L.Ed.2d at 545; (3) that affidavits are normally drafted by nonlawyers and "issued on the basis of nontechnical, common-sense judgments of laymen," *id.* at 2330, 76 L.Ed.2d at 546; (4) that a court's scrutiny of the sufficiency of an affidavit should not take the form of *de novo* review, *id.* at 2331, 76 L.Ed.2d at 547; (5) that if courts subject affidavits to greater scrutiny, police may resort to warrantless searches "with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search," *id.*; and (6) that rigorous application of the *Aguilar-Spinelli* requirements will impede the task of law enforcement, diminishing the value of anonymous tips in police work. *Id.* at 2331–32, 76 L.Ed.2d at 547–48.

■ These propositions do not persuade us that we should abandon the *Aguilar-Spinelli* test under Article I, Section 14 of the Alaska Constitution. As for proposition (1), the two-pronged test has not reduced probable cause to a neat, artificial set of legal rules. "Rather, the two-pronged test simply provided a structure for probable cause inquiries, and if not rigidly applied, allowed sufficient room for assessment of the unique facts of the particular case." [3] We find Justice Brennan's defense of *Aguilar-Spinelli* persuasive:

> *Aguilar* and *Spinelli* require the police to provide magistrates with certain crucial information. They also provide structure for magistrates' probable cause inquiries. In so doing, *Aguilar* and *Spinelli* preserve the role of magis-

trates as independent arbiters of probable cause, insure greater accuracy in probable cause determinations, and advance the substantive value of precluding findings of probable cause, and attendant intrusions, based on anything less than information from an honest or credible person who has acquired his information in a reliable way.

*Gates*, 103 S.Ct. at 2357, 76 L.Ed.2d at 580 (Brennan, J., dissenting).

We have also emphasized the independent role of a magistrate in the determination of probable cause. *Moreau v. State*, 588 P.2d 275, 281 (Alaska 1978). When an affidavit relies upon the assertion of a confidential informant to establish probable cause, the affiant must set forth sufficient facts to enable the magistrate to assess the informant's probable credibility. "Only if this requirement is met can a reviewing court be certain that the magistrate has fulfilled his constitutional duty to render an independent determination that probable cause exists." *Keller v. State*, 543 P.2d at 1216.

■ As for proposition (2), a strong showing on one prong should not overcome a deficiency in the other prong. For example, we have held that a sufficiently detailed tip could support an inference of an informant's personal knowledge under the "basis of knowledge" prong. *Davis v. State*, 499 P.2d 1025, 1029 (Alaska 1972), *rev'd on other grounds*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, a detailed description by itself sheds no light on an informant's veracity. "If the informant were concocting a story out of whole cloth, he could fabricate in fine detail as easily as with rough brush strokes." *Stanley v. State*, 19 Md.App. 507, 313 A.2d 847, 862 (1974).

■ Conversely, a strong showing of the informant's veracity does not compensate for a failure to explain how the informant reached his conclusions. "Truthful persons

**3.** 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 3.3 at 136 (1984 Supp.).

can be the bearers of hearsay, rumor, gossip, or bare conclusions, as surely as can be liars." *State v. Jackson,* 688 P.2d at 142. Without a requirement of an adequate basis of knowledge, the magistrate may mistakenly rely on "a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation" in making a probable cause determination. *Keller v. State,* 543 P.2d at 1218 (quoting *Spinelli v. United States,* 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed. at 637).

In proposition (3), the Supreme Court notes that nonlawyers often draft affidavits in the haste of criminal investigation. In *Keller,* we stated:

> The purpose of the warrant requirement is to prevent the police from hasty, ill-advised, or unreasonable actions in "the often competitive enterprise of ferreting out crime."

*Id.* at 1219 (quoting *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948)). *"Because* nonlawyers are so often involved in the initial probable cause determination, there is a need for a test that provides more guidance than a totality of circumstances approach." [4] As Justice White states in his concurring opinion, it will often be a difficult question whether a particular anonymous tip provides the basis for issuing a warrant. However, rather than "totally abdicating our responsibility in this area," we should "attempt to provide more precise guidance" for the police and magistrates. *Gates,* 103 S.Ct. at 2350, 76 L.Ed.2d at 571 (White, J., concurring).[5]

Proposition (4) states that a court should not undertake a *de novo* review of the sufficiency of the warrant. Under Alaska law, a magistrate's initial determination of probable cause is given considerable deference. The resolution of doubtful or marginal cases should be largely determined by the preference accorded to warrants. *Johnson v. State,* 617 P.2d 1117, 1122 (Alaska 1980); *Lockwood v. State,* 591 P.2d 969, 970–71 (Alaska 1979). Therefore, proposition (4) merely reiterates the present state of the law in Alaska.

We find proposition (5) equally unpersuasive. Under Alaska law, there has been a strong preference for the warrant process. We have previously stated:

> the principle of antecedent justification is so central to the Fourth Amendment that subject only to a few specifically established and well-delineated exceptions "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment."

*McCoy v. State,* 491 P.2d 127, 132 (Alaska 1971) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967)). *See also Keller v. State,* 543 P.2d at 1219–20; *Reeves v. State,* 599 P.2d 727, 735 (Alaska 1979) (expressing strong preference for the warrant process under the state constitution).

Finally, in proposition (6), the *Gates* majority asserted that rigid application of the two-pronged test could seriously impede law enforcement by diminishing the value of anonymous tips in police work. In part, the United States Supreme Court was probably influenced by the Illinois court's appli-

---

**4.** Kamisar, *Gates, "Probable Cause," "Good Faith," and Beyond,* 69 Iowa L.Rev. 551, 572 (1984) (emphasis in original).

**5.** In a cogent criticism of proposition (3) of the *Gates* majority, Professor LaFave wrote:
The now abandoned *Aguilar* formula provided direction and thus afforded some assurance of rational decision making.... The Court's prior cases, by stressing the independent importance of both the veracity and the basis of knowledge inquiries and by identifying various ways in which each requirement could be met, provided a most useful framework within which both police and magistrates could meaningfully operate. By comparison, the *Gates* approach, consisting largely of an exhortation to use common sense, does not afford guidance to police and magistrates. It thus enhances the risk that probable cause determinations will be grounded more upon the predilictions of the decisionmaker and less upon established rules of law....
LaFave, *Fourth Amendment Vagaries (Of Improbable Cause, Imperceptible Plain View, Notorious Privacy, and Balancing Askew),* 74 J. of Crim.L. & Criminology 1171, 1189–90 (1983).

cation of the *Aguilar-Spinelli* test. The Illinois Supreme Court held that police corroboration of details in an anonymous letter could never satisfy the "veracity" prong, especially if only innocent details were corroborated. *Gates,* 103 S.Ct. at 2327, 76 L.Ed.2d at 543.

In contrast, however, Alaska case law reflects a flexible application of the *Aguilar-Spinelli* test. For example, in *Schmid v. State,* 615 P.2d 565 (Alaska 1980), police corroboration of details provided by a confidential informant sufficiently established probable cause. We rejected the defendant's argument that police should verify an incriminating fact before corroboration could be used to demonstrate an informant's credibility, because this "would severely limit the use of informants to provide probable cause." *Id.* at 577. *See also Kralick v. State,* 647 P.2d 1120, 1123–24 (Alaska App.1982) (magistrate could conclude that informant's tip was based on his personal observations because the tip's information was sufficiently detailed to support an inference of personal knowledge. Additionally, the informant's credibility was demonstrated by police observations). Under Alaska law, the anonymous tip continues to play an important role in police work.[6]

### III. ANALYSIS OF AFFIDAVITS UNDER THE ALASKA CONSTITUTION

After carefully reviewing the majority's reasoning in *Gates,* we conclude that the *Gates* totality of the circumstances approach does not provide the constitutional protection against unreasonable searches and seizures required by Article 1, Section 14 and Article 1, Section 22 of the Alaska Constitution.[7] In previous cases, we have stated that the state constitutional guarantee against unreasonable searches and seizures is broader in scope than Fourth Amendment guarantees under the United States Constitution. In part, this broader protection results from the more extensive right of privacy guaranteed by Article I, Section 22 of our state constitution. *Reeves v. State,* 599 P.2d at 734. Therefore, we must test the validity of the affidavit in this case under Alaska's constitutional guarantees.

When a search warrant is based on the hearsay statement of a confidential informant, the affiant must establish the informant's basis of knowledge and veracity. To establish the informant's basis of knowledge, the information must be based on the informant's personal observations, not his suspicions or beliefs. *Davis v. State,* 499 P.2d at 1029. If the affidavit lacks an affirmative allegation of the informant's personal knowledge, "the facts supplied must be so detailed as to support an inference of personal knowledge." *Id.; see Keller v. State,* 543 P.2d at 1217.

Additionally, the affiant must inform the magistrate or judge of some of the underlying circumstances that led the affiant to conclude that the informant was

---

**6.** Regarding the proper function of the anonymous tip in police work, Professor LaFave noted:

Certainly, as Justice Brennan pointed out, there "is no basis for treating anonymous informants as presumptively reliable" nor "for assuming that the information provided by an anonymous informant has been obtained in a reliable way." [*Gates,* 103 S.Ct. at 2356, 76 L.Ed. at 578] But an anonymous tip can prompt a police investigation by which the necessary facts could be developed, as the *Gates* case itself illustrates.... [I]f the police had heeded the [anonymous] letter writer's promise [in *Gates*] that "if you watch them carefully you will make a big catch," other facts would doubtless have come to light add-

ing up to the pre-*Gates* quantum of probable cause. That is the proper place of informants in the probable cause equation.

LaFave, *supra* note 5, at 1192 (footnotes omitted); *see also Keller v. State,* 543 P.2d at 1220 (commending police work in verification of details in informant's statement).

**7.** In this opinion, we rely on federal precedents to interpret the requirements of the Alaska Constitution as we would rely on the precedents of other jurisdictions. A search warrant based on a confidential informant's report must establish the informant's basis of knowledge and veracity under the Alaska Constitution and Alaska case law. *Michigan v. Long,* 463 U.S. 1032, 1040, 103 S.Ct. 3469, 3475, 77 L.Ed.2d 1201, 1214 (1983).

credible or that his information was reliable. *Davis* at 1029. An informant's veracity may be established by demonstrating his past reliability, or by independent police corroboration of detailed facts in the informant's story. *Schmid v. State,* 615 P.2d at 575, 577. *See also Keller v. State,* 543 P.2d 1211; *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The personal identity and involvement of the informant may also establish his veracity. *Davis,* 499 P.2d at 1029.[8] When information is provided by a citizen informer rather than an informant from the criminal milieu, there is less need to establish a citizen informer's credibility.[9] It is sufficient that police verify some of the details of the information provided by a citizen informer. *Erickson v. State,* 507 P.2d 508, 517–18 (Alaska 1973). Finally, an informant's admission against his penal interest may be sufficient to establish his veracity in certain circumstances. *Fleener v. State,* 686 P.2d 730, 732–33 (Alaska App.1984); *State v. Malkin,* 678 P.2d 1356, 1359–60 and n. 4 (Alaska App.1984), *petition for hearing granted* (Alaska, May 7, 1984); *Hubert v. State,* 638 P.2d 677, 686 (Alaska App.1981); *cf. Clark v. State,* 704 P.2d 799, 804, 805 (Alaska App.1985).[10]

■ We now proceed to test the affidavit in this case to assess whether it properly established the confidential informant's basis of knowledge and veracity. To satisfy the first prong, the affidavit states that the informant B.V. had personal knowledge of Jones' drug dealing through his own purchases. We conclude that the basis of knowledge prong was adequately demonstrated. *Morris v. State,* 473 P.2d 603, 605 (Alaska 1970).

■ However, the affidavit does not satisfy the second prong of the test because it does not properly establish the informant's veracity. The affiant does not contend that B.V. provided reliable information in the past. Nor does the affidavit state that the police conducted an independent investigation to corroborate the accuracy of B.V.'s contention that Jones was a cocaine dealer. A mere confirmation that Jones actually lived in the apartment indicated by B.V. does not qualify as independent corroboration by the police. *See Clark v. State,* 704 P.2d at 804. B.V.'s tip, standing alone, could not establish probable cause. However, the police could have used the tip to further their investigation into Jones' activities.[11]

■ On the issue of statements against penal interest, the court of appeals did not regard B.V.'s statements as inherently credible. First, the court noted that it is not a crime to be present when someone else is purchasing cocaine. Second, vague admissions about past purchases of cocaine would not support a criminal prosecution absent evidence of a specific purchase. The court also stated:

> More significantly, the affidavit does not explain the circumstances under which B.V.'s statements were made. If B.V. was being prosecuted by juvenile authorities for drug transactions unrelated to Casey Jones, he would hardly view his statement that he had purchased cocaine in the past from Jones as increasing his exposure to criminal sanctions.

*Jones v. State,* 681 P.2d at 365.

■ We require that the police provide full disclosure of all relevant circumstances so that a magistrate can independently as-

---

**8.** *See Pendergrast v. United States,* 416 F.2d 776, 785 (D.C.Cir.1969), *cert. denied,* 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969); *McCreary v. Sigler,* 406 F.2d 1264, 1269 (8th Cir.1969).

**9.** *See* 1 W. LaFave, *supra* note 3, § 3.3 at 499. As Justice Harlan pointed out in *United States v. Harris,* 403 U.S. at 599, 91 S.Ct. at 2089, 29 L.Ed.2d at 743:

> the ordinary citizen who has never before reported a crime to the police may, in fact, be

more reliable than one who supplies information on a regular basis. "The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals."

**10.** *Id.* § 3.3(c).

**11.** *See Keller v. State,* 543 P.2d at 1220; Kamisar, *supra* note 4, at 576; LaFave, *supra* note 5, at 1191–92.

sess the significance of an informant's admission against penal interest in the context of each case.[12] *See United States v. Harris,* 403 U.S. at 598, 91 S.Ct. at 2089, 29 L.Ed.2d at 742 (Harlan, J., dissenting) (Fourth Amendment requires that conclusion of probable cause be drawn from underlying facts and circumstances by the magistrate, not the police); *cf. Keller v. State,* 543 P.2d at 1216; LaFave, *supra* note 3, at 525. In this case, the affidavit did not contain sufficient detail to allow an independent assessment by a magistrate. B.V. could be a protected police informant, whose statements are not inherently reliable because he does not need to fear the threat of prosecution. *Clark v. State,* 704 P.2d at 805. *See also* LaFave, *supra* note 3, at 526. B.V. may have recently been arrested for possession of drugs when he admitted to purchases from various sources in the recent past. "Such a generalized and unfocused set of allegations might well be nothing more than a series of falsehoods involving the names of several persons he has heard it rumored use or sell narcotics, for he could well anticipate that if the police act upon the information they will likely discover narcotics at some of the identified premises." LaFave, *supra* note 3, at 529. *See e.g., United States v. Harris,* 403 U.S. at 595, 91 S.Ct. at 2087, 29 L.Ed.2d at 740 (Harlan, J., dissenting) (rationale for rule of statements against penal interest does not apply in a case in which government informant expects immunity from prosecution in return for his statements); *United States v. Martin,* 615 F.2d 318, 325–26 (5th Cir.1980); *People v. Horton,* 74 Ill.App.3d 293, 30 Ill.Dec. 181, 183–84, 392 N.E.2d 946, 948–49 (1979).

The affidavit provided the only evidence for the magistrate to determine probable cause in this case. In determining the validity of a search warrant, a reviewing court may consider only information brought to the issuing magistrate's attention. *Morris v. State,* 473 P.2d at 605. It is imperative under the Alaska Constitution that the magistrate be presented with adequate supporting facts so that he can independently test the confidential informant's basis of knowledge and veracity.[13] Only if these requirements are met "can a reviewing court be certain that the magistrate has fulfilled his constitutional duty to render an independent determination that probable cause exists." *Keller v. State,* 543 P.2d at 1216.

In this case, the magistrate did not have sufficient information in the affidavit to make a reasoned decision to issue the search warrant. Consequently, the warrant was improperly issued and the fruits of the search must be suppressed.

The decision of the court of appeals reversing the superior court is hereby AFFIRMED on the basis of the Alaska Constitution.

MATTHEWS, Justice, dissenting.

### I.

This case is a good illustration of why the so-called two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) has been abandoned by the United States Supreme Court. There is no reason to doubt that B.V.'s story as related in the affidavit of officer Fitzgerald was true. It was based on the personal

---

12. In our view, unless we require that the affidavit supply the magistrate with the underlying facts and circumstances of an informant's statement, there is no principled way for a magistrate to assess an informant's remarks in context. We agree with Professor LaFave that a court should not utilize the concept of an admission against penal interest in a "blunderbuss fashion." Instead, a court should "assess in a more careful fashion, preferably upon a full disclosure by the police of all [relevant] circumstances, what the significance of that admission

is in the context of the particular case." LaFave, *supra* note 3, at 525.

13. In *Harrelson v. State,* 516 P.2d at 394–95, we stated:

In order to prevent groundless searches based on wholly unreliable information from being inflicted on citizens of this State, we shall continue to insist that the circumstances that would justify a magistrate in crediting an informant's statements shall be set out with specificity in the affidavit.

observations of B.V., the last of which was made only three days before the warrant was issued. It was detailed, rather than conclusory. There was nothing inherently improbable about what B.V. said; no reason was evident why he might wish to fabricate such a story; it did not reflect favorably on him; and he would know that if the story was false, the falsehood would quickly be discovered and consequences adverse to him could result. For these reasons there can be no doubt that a reasonable person in the position of the magistrate when presented with officer Fitzgerald's account of B.V.'s story would conclude that evidence of the crime of sale or possession of cocaine was probably present in Jones' apartment. The majority does not contest any of this squarely. Instead, it is content to say that the so-called "veracity prong" of the *Aguilar* test has not been satisfied and therefore the warrant must be quashed.

It is well to remember that the framers of the Alaska Constitution only required that probable cause be present before a search warrant could be issued. Article I, § 14 of the Alaska Constitution provides that "no warrants shall issue, but upon probable cause, ..." A test of probable cause to search which is faithful to the text of our constitution would be as follows:

> Probable cause to search exists if the man of ordinary caution would be justified in believing that what is sought will be found in the place to be searched ... and that what is sought, if not contraband or fruits or implements of crime, will "aid in a particular apprehension or conviction."

*State v. Doe,* 115 N.H. 682, 371 A.2d 167 (1975), quoted with approval in 1 LaFave, *Search and Seizure* § 3.1, at 442 n. 21 (1978).

This test, or tests of similar generality, having as a common element the reasonable man or the person of ordinary caution who must conclude from all the facts and circumstances that the thing sought is probably present in the place to be searched, was the generally understood test for probable cause to search when our constitution was adopted in 1956. *Dumbra v. United States,* 268 U.S. 435, 441, 45 S.Ct. 546, 548, 69 L.Ed. 1032, 1036 (1925); *United States v. Doe,* 19 F.R.D. 1, 3–4 (E.D.Tenn.1956); *United States v. Evans,* 97 F.Supp. 95, 96 (E.D.Tenn.1951); *Tischler v. State,* 206 Md. 386, 111 A.2d 655, 657 (1955). Since the language used by the framers of our constitution was the same as that of the federal constitution, and of many states, there is every reason to suppose that a meaning similar to that prevailing elsewhere was intended.[1] To the extent that the *Aguilar* test may serve as a guide in determining the question of probable cause it can be used. However, when it requires a result at odds with the meaning of probable cause, it is *Aguilar* and not the meaning of probable cause that should give way.

The premise of the "veracity prong" of the *Aguilar* test is that all informants are unworthy of belief until proven otherwise. I question whether this premise is warranted by actual experience. Certainly the assumption of our evidence rules is that witnesses may be believed without first proving their credibility, as evidence of a witnesses good character, or a specific instance of his truthfulness, is not even admissible unless the witnesses credibility has first been attacked. Ev.R. 608(a) and (b). Thus, B.V.'s testimony would be admissible at trial and could serve as a basis for convicting Jones. Since the standard of proof required to convict is much stricter than that needed to obtain a warrant, it is an anomaly that his statement has been ruled insufficient as a basis for a warrant.

---

1. *See State v. Wassillie,* 606 P.2d 1279, 1282 (Alaska 1980) where in denying bail to a convict awaiting sentencing we said:

> If a result at variance with the historic experience of our sister states were intended, the framers would have found the words to express it. Far from doing so, they chose largely customary phraseology.... It is plain to us that the framers of our constitution intended the same result.

This reasoning is most appropriate in our interpretation of the meaning of probable cause.

We have often stated that the decision of the judicial officer who issued a warrant is to be given "great deference" and that "the resolution of doubtful or marginal cases" of probable cause "should be largely determined by the preference to be accorded to warrants." *Johnson v. State,* 617 P.2d 1117, 1122 (Alaska 1980); *Ellsworth v. State,* 582 P.2d 636, 638 (Alaska 1978); *Keller v. State,* 543 P.2d 1211, 1220 (Alaska 1975). The reason for this deference is that " 'probable cause' is a concept which is not capable of precise definition, since it must cover a wide range of factual settings." *Id.* Today's opinion, by narrowly focusing on the "veracity prong" of the *Aguilar* test rather than the meaning of probable cause runs counter to the spirit of these observations. The dissenters in *Aguilar,* Justices Clark, Black, and Stewart, said that the majority opinion in that case had "substituted a rigid, academic formula for the unrigid standards of reasonableness and 'probable cause' laid down by the Fourth Amendment itself—a substitution of technicality for practicality and . . . that the Court's holding will tend to obstruct the administration of criminal justice throughout the country. . . ." 378 U.S. at 122, 84 S.Ct. at 1518, 12 L.Ed.2d at 733. In my view, that remains an apt description of the now discredited *Aguilar* test and it is regrettable that today's majority opinion continues to follow it.

## II.

Not only does the majority err by clinging to the *Aguilar* test, it compounds the error by misapplying it. It is clear that an informant's veracity for the purposes of *Aguilar* may be established when he makes statements against his penal interest. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). In this case, the majority concludes that B.V.'s statement did not qualify as a statement against penal interest because B.V.'s admission would not subject him to criminal liability unless evidence of the *corpus*

*delicti* for a specific purchase were present. This restrictive and technical interpretation of "against penal interest" is in conflict with the *Harris* opinion.

B.V.'s statement is nearly parallel to that of the informant in *Harris,* who told the affiant that he had bought illicit liquor at the defendant's residence "for a period of two years and most recently within the past two weeks." 403 U.S. at 575, 91 S.Ct. at 2078, 29 L.Ed.2d at 729. Like this case, the affidavit in *Harris* said nothing about whether evidence of the *corpus delicti* of the informant's admitted crimes was available. Even so, the Supreme Court had little trouble in finding that the unsupported admissions were sufficient to satisfy the veracity requirement.

Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a "break" does not eliminate the residual risk and opprobrium of having admitting criminal conduct. Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another. But here the informant's admission that over a long period and currently he had been buying illicit liquor on certain premises itself and without more, implicated that property and furnished probable cause to search. 403 U.S. at 583–84, 91 S.Ct. at 2082, 29 L.Ed.2d at 734.

Since B.V.'s statement cannot be distinguished from that presented in *Harris* in any principled way, B.V.'s statement should be regarded as sufficiently adverse to his penal interest to satisfy the veracity requirement of the *Aguilar* test.[2] Thus,

2. Other authorities have found that an informant's veracity was sufficiently established for

the purposes of *Aguilar* by a statement against penal interest which does not contain informa-

on this ground too I would reverse the decision of the court of appeals and order Jones's conviction reinstated.

tion concerning the circumstances under which the statement was made. *Armour v. Salisbury,* 492 F.2d 1032 (6th Cir.1974) (statement that informant had purchased marijuana from defendant on several occasions sufficient); and *State v. Archuleta,* 85 N.M. 146, 509 P.2d 1341, 1342 (App.1973), *cert. den.* 85 N.M. 145, 509 P.2d 1340 (1973), *cert. den.* 414 U.S. 876, 94 S.Ct. 85, 38 L.Ed.2d 121 (1973) (statement that informant had made approximately ten purchases of heroin at a specified residence sufficient without additional facts).