**Darryl W. SLEDGE, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–1892.

Court of Appeals of Alaska.

Nov. 10, 1988.

Blair McCune, Asst. Public Defender, Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

SINGLETON, Judge.

Darryl W. Sledge was convicted of one count of sexual assault in the first degree, an unclassified felony. AS 11.41.410(a)(1). He was sentenced to serve the applicable eight-year presumptive term. AS 12.55.-125(i)(1). Sledge appeals. We conclude that it is necessary to remand this case for a further hearing to determine whether Sledge was denied his constitutional right to confront his accuser.

## FACTS AND PROCEEDINGS

D.W., a fourteen-year-old girl, testified that on November 9, 1985, she accepted a ride with Darryl W. Sledge in his automobile. D.W. agreed to accompany Sledge to the store, and then Sledge was to take her home. D.W. testified that instead of taking her home as promised, Sledge purchased beer at the store and then drove her to a secluded place where he attempted to sexually assault her. He succeeded in penetrating her vagina with his finger. The sexual assault was interrupted by a passing police officer. Sledge recounted a substantially different story. He agreed that he gave D.W. a ride in his car, but contended that D.W. gave him money and he bought her a six-pack of beer. Sledge further stated that after leaving the store he and D.W. drove around so that D.W. could smoke a marijuana cigarette. Sledge claimed that he and D.W. got into an argument because she was drinking in his car. He stopped the car and poured out the beer she had opened. Sledge said that when the police arrived, D.W. panicked and jumped out of the car. D.W.'s testimony that she was sexually assaulted was corroborated in part by medical testimony that she had a small cut on the lower part of her vagina.

Prior to the start of trial, Sledge filed a discovery motion, requesting D.W.'s "Child in Need of Aid" (CINA) file, and her file from the Division of Family and Youth Services (DFYS). In support of his request, he argued in part:

> [D.W.] alleged that Sledge had sexually assaulted her in his vehicle. She denied consuming any alcohol or marijuana with Sledge. Sledge claimed that [D.W.] went with him voluntarily and consumed alcohol at her own request. [D.W.] informed the officers that she was a ward of the state. Therefore, she had been unwilling to violate any drinking laws with Sledge.

. . . .

[D.W.] was the one who informed the officers of her legal custody status. Discovery of [D.W.'s] Child in Need of Aid file, both the court file and the Division of Family and Youth Services file, is necessary for Sledge to explore the possibility that [D.W.] is biased and motivated to shade or fabricate her testimony in order to avoid detrimental consequences for herself in the Child in Need of Aid case.

Sledge agreed that Superior Court Judge S.J. Buckalew, Jr., the omnibus hearing judge, should conduct an *in camera* inspection of the DFYS file to determine if anything in the file should be disclosed to Sledge. After conducting the *in camera* inspection, Judge Buckalew determined that nothing in the DFYS file should be disclosed to Sledge.[1]

Superior Court Judge J. Justin Ripley substituted for Judge Buckalew at trial and sentencing. Based on Judge Buckalew's ruling that nothing in the DFYS file was discoverable, the state requested a protective order barring Sledge from inquiring into D.W.'s residence in a foster home during the course of trial. In response, defense counsel pointed out that:

> [D.W.], in making the statement to the police, explaining why she did certain things, or did not do certain things, raised up the fact that she was a ward of the state and therefore to avoid getting in trouble she did not do certain things in the car with Mr. Sledge. And since she brought it up, I intend to ask her about that.

Defense counsel therefore requested that Judge Ripley not enter a protective order. Judge Ripley replied that this would appear to be going into "misconduct of the victim."

Defense counsel responded:

> Well, mostly motive and bias actually. As to—she's saying that she's under

---

1. It was unclear from the original record exactly what files Judge Buckalew inspected. This issue was remanded to Judge Buckalew for clarification. After this issue was remanded, DFYS was ordered to turn over all of D.W.'s files. According to Judge Buckalew's findings after remand, DFYS had turned over additional files that were not turned over to Judge Buckalew prior to trial. Consequently, Judge Buckalew did not have an opportunity to review all of D.W.'s DFYS files prior to trial.

some sort of restriction. I don't know what the restrictions are, I don't know if—anything about that. But there is something there that she did not drink with Mr. Sledge, or accept what she claims is an offer of marijuana because she was a ward of the state. And she was afraid that if she violated whatever those conditions were, she would get in trouble with the state and with her foster parents.

Judge Ripley asked that no examination on the matter be conducted until a hearing out of the presence of the jury could be held to determine whether the evidence had any relevance. Judge Ripley did not review D.W.'s DFYS files, but he accepted Judge Buckalew's ruling on this matter, concluding that it was the law of the case unless relaxed at a later time.

After D.W. had testified on direct and cross-examination, the jury was excused and Sledge renewed his request to inquire into her wardship status. The defense counsel reasoned:

> Your honor, my request is that I be allowed to—at least outside the presence of the jury to ask her about her—why she is a ward of the state. The reason is this. When the police officer—she was explaining to the police officer that I don't—I didn't take any marijuana, I told him I didn't want any and I wouldn't have any beer because I'm a ward of the state and that would violate my—whatever the … conditions were. I simply want to ask her … I assume it's a CINA situation. But I don't know why she is a—of course. And it may be entirely innocent. It may, however, be related to prior difficulties. I don't know whether her being there would result in some sort of adjudication against her. That's what I want to get to. And I know—and it may well be entirely innocent and not something that the jury should hear. It may well be, however—it may go toward motive or bias. I don't know. And I think we should at least ask her outside the presence [of the jury] and clarify that.

The state did not dispute this offer of proof, arguing that if, in fact, D.W. was worried about her wardship status, that would motivate her to refrain from drugs and alcohol. The state's attorney said:

> That she didn't want—no, I don't want to smoke any marijuana because I'm not allowed to because I'm in the custody of the state. This is the statement that he wants to tap all this on to. So, even if it shows that she's in the custody of the state and she's under some kind of probation, all it shows is that she was telling the truth when she said that. It just drags in all these bad acts to confirm her statement, which is not before the jury.

Judge Ripley concluded that Judge Buckalew's prior ruling barring discovery of D.W.'s wardship status should stand. Thus, the ruling precluded the cross-examination requested by Sledge.

Additionally, on direct examination of Sledge, defense counsel attempted to elicit testimony from Sledge that D.W. told him she was a ward of the state. Sledge had been explaining his version of what occurred when the police arrived. The state objected, and outside the presence of the jury, Sledge told the court the statement he wanted to make. He was allowed to say, in front of the jury, that D.W. panicked and jumped out of the car, saying, "I don't want to get my parents in trouble." Sledge wanted to testify that D.W. said she didn't want to get her parents in trouble because she was a ward of the state. He also wanted to testify that immediately before jumping out of the car D.W. said, "I'm in … trouble now." Judge Ripley ruled that Sledge could mention neither that D.W. told him she was a ward of the state nor that she was in foster care. The jury found Sledge guilty of sexual assault in the first degree. AS 11.41.410(a)(1). No statutory, aggravating, or mitigating factors were proposed at trial. Sledge, however, requested that his case be referred to the three-judge panel. AS 12.55.165–.175. Judge Ripley denied Sledge's request, and imposed the applicable eight-year presumptive term. AS 12.55.125(i)(1).

## DISCUSSION

Sledge first argues that the trial court abused its discretion by excluding evidence regarding D.W.'s status as a ward of the state. Sledge argued that D.W.'s statements regarding her wardship status were made at the scene and reflected her state of mind at the time she first told the police that Sledge assaulted her. In Sledge's view, this information could be relevant to show why D.W. apparently had a particularized fear that, if caught in the activity Sledge said she had engaged in, *i.e.*, drinking beer and smoking marijuana, she could be subject to adverse consequences that would not be present if she were not a ward of the state. Consequently, in Sledge's view, this would show D.W.'s bias and motive to fabricate. D.W. might have hoped that by falsely accusing Sledge of sexual assault, she would divert attention from her own activities and gain sympathy, rather than sanction, from the authorities. Sledge claims that by not allowing D.W.'s foster care status into evidence, the trial court denied Sledge his right to cross-examine the prosecution's witness in violation of the confrontation clauses of the United States and the Alaska constitutions. U.S. Const. amend. VI; Alaska Const., art. 1, § 11. *See Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Jackson v. State*, 695 P.2d 227, 230–33 (Alaska App.1985); *Fox v. State*, 685 P.2d 1267, 1272–73 (Alaska App.1984).

The state argues that the evidence was irrelevant and, even if relevant, its probative value was outweighed by the prejudice involved in violating D.W.'s privacy with regard to her status as a ward of the state. *See* Alaska Evidence Rule 403; *Larson v. State*, 656 P.2d 571, 575 (Alaska App.1982) (Alaska Evidence Rule 403, when properly applied, does not violate a defendant's constitutional right to confront the witnesses against him and present evidence in his own behalf).

Finally, the state argues that any error was harmless. First, the state notes that Sledge was allowed to testify to the following before the jury: that D.W. told him she did not wish to get her parents in trouble, and that she feared she was in trouble by being with Sledge in a parked car. The state points out that Sledge was able to argue this point in closing argument. Second, the state argues that the probative value of the evidence was weak because, assuming the worst, D.W.'s wardship status would not put her under the same pressures to "play ball with the state," that a person on probation for a criminal or delinquent act would have. Third, the state points out that D.W.'s testimony was substantially corroborated by medical evidence of the injury to her vagina and by physical evidence of her torn clothing. Fourth, the state points out that when D.W. ran from Sledge's vehicle to the police vehicle, she ignored a snarling police dog. In the state's view, this is more consistent with a frightened rape victim seeking protection than a calculating liar seeking to explain away a consensual sexual encounter and voluntary consumption of marijuana and alcohol. Finally, the state points to Sledge's allegedly false and inconsistent exculpatory statements to the police which the state contends establish his consciousness of guilt.

■ We are concerned that Sledge may have been restricted in his ability to present evidence to show the victim's motive to fabricate, and that he was unable to adequately present his theory of defense to the jury. Sledge was only able to make a generalized argument as to D.W.'s motive to testify falsely. Essentially, Sledge was only left with the argument that anyone in D.W.'s position would have a motive to testify falsely. It is possible that Sledge was prevented from making the much stronger argument that D.W. had a special fear of adverse consequences because she was a ward of the state and under foster care. Sledge could argue that another young woman who was not a ward of the state would not have the same fear under similar circumstances. D.W. attached great importance to her wardship status. This is indicated by her statements to the police and her fear that adverse consequences would result if she had voluntarily consumed alcohol and smoked marijuana.

Thus, her wardship status strongly suggests that she had a motive to fabricate. Consequently, the exclusion of evidence concerning D.W.'s status as a ward of the state may have unduly infringed on Sledge's confrontation rights. We therefore remand this case for a hearing to enable counsel to *voir dire* D.W. regarding her statements to the police and her understanding of the circumstances surrounding her wardship status. If the court concludes on remand that a jury could reasonably conclude that D.W. did tell the police she would not take drugs or use alcohol because she was a ward of the state, Sledge should be granted a new trial so that a jury can consider the effect of such statements. This could indicate D.W.'s state of mind and might support an inference that she had a motive to falsely accuse Sledge of a sexual assault. The state may be correct that D.W.'s concerns about her wardship status would motivate her to refrain from alcohol and marijuana and, thus, corroborate her claims. However, as Sledge points out, it might also motivate her to lie about her activity with Sledge if, in fact, she had consumed drugs and alcohol and was concerned about the consequences of her conduct being discovered. In such cases, it was for the jury to determine the true interplay between D.W.'s state of mind and the accuracy of her testimony.

■ We stress the limited nature of our holding. The fact that D.W. may have voluntarily used drugs or alcohol with Sledge in violation of her wardship conditions clearly would not provide a defense to his sexually assaulting her. Since D.W. was only fourteen years old, her consent would not provide a complete defense to a charge of sexual assault. The significance is the possibility that D.W.'s use of drugs or alcohol might, under the circumstances, motivate her to falsely accuse Sledge of sexual assault when they were discovered by the police. We stress that it is D.W.'s state of mind exemplified by her statements to the police that is in issue, not D.W.'s wardship as such, or the reasons why she may have been in custody. We are not suggesting that extrinsic evidence regarding the facts leading to her status is admissible unless necessary to enable the jury to evaluate her state of mind in accusing Sledge of a sexual assault.

■ The trial court should address one additional issue on remand. Sledge argues that he should have had access to any information in D.W.'s DFYS and CINA files that would be relevant to show her bias or motive to fabricate. The state argued at trial that only juvenile adjudications relevant to D.W.'s truth and veracity should be discoverable. *See* Alaska Evidence Rule 609(e). At the time Judge Buckalew reviewed the files, he failed to indicate what type of information he viewed as discoverable. In his findings after remand, however, Judge Buckalew indicated that he viewed the material with the intent to disclose only material relating to the witness' credibility and veracity. It appears that a broader standard for disclosure is required.

In *Braham v. State*, 571 P.2d 631 (Alaska 1977), the Alaska Supreme Court considered the state's duty to disclose otherwise privileged information to a criminal defendant and stated that only relevant evidence must be disclosed. The court explained that the term "relevant" encompassed both logical relevance and materiality. *Id.* at 643 n. 17. Nondisclosure, the court indicated, would be proper only if the prosecution showed that disclosure would be inconsistent with enforcement or protection of the privacy interests of the individual, and if the information was not relevant to the defense. "Disclosure is ... required if the judge's in camera inspection showed that the material was relevant to the defense—whether or not the prosecutor had demonstrated that discovery would be inconsistent with enforcement or protection efforts." *Id.* at 643. Relevant evidence, in the context of this case, would seem to include evidence showing D.W.'s bias or motive to fabricate.

The United States Supreme Court recently decided a case very similar to the one at bar. In *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the

Court held that the defendant was not entitled to disclosure of certain records pertaining to investigation into the victim's sexual abuse. The Court approved an *in camera* review of the records by the trial court similar to the review required by *Braham. Id.* 107 S.Ct. at 1002–04.

■ With regard to the standard of disclosure, the Court stated that any material evidence should be disclosed to the defendant. Material evidence means any evidence where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* 107 S.Ct. at 1001 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985)). In his concurring opinion, however, Justice Blackmun points out that evidence which could be used to impeach a witness by demonstrating bias would be within the court's definition of materiality. *Ritchie,* 107 S.Ct. at 1006 n. 2 (Blackmun, J., concurring). We agree with this conclusion. Therefore, on remand, the judge reviewing D.W.'s DFYS and CINA files should disclose to Sledge any information that is relevant to show D.W.'s bias or motive to fabricate, as well as any other relevant evidence.[2]

■ One additional point needs clarification. In *Ritchie,* the Supreme Court stated that, "the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as proceedings progress, and the court would be obligated to release information material to the fairness of the tri-

al." *Ritchie,* 107 S.Ct. at 1003. In the present case, Judge Buckalew reviewed the files, but Judge Ripley presided over the case at trial. To comply with the ongoing duty of disclosure, the trial judge, at trial, must review the files. Consequently, the trial judge, on remand, should review the files to determine whether there was any discoverable material.

The judgment of the superior court is REVERSED, and this case is REMANDED for further hearing to determine whether D.W. made statements to the police indicating a motive to falsely accuse Sledge of sexual assault. If the court is satisfied that such statements were made under circumstances which would permit a jury to infer bias, a new trial should be granted; if, on reconsideration, any materials in D.W.'s file should have been made available to the defense and, if made available, might have affected the results of the trial, a new trial should be granted. If not, the trial court may reinstate Sledge's conviction.[3]

---

**2.** D.W.'s DFYS and CINA records are confidential, and access to them can be had "only with the court's permission and only by persons having a legitimate interest in them." AS 47.10.-090(a). The use of this information to impeach D.W. by showing her motive to fabricate would appear to give Sledge a legitimate interest in the records. Therefore, if there was information in the files that could be used to impeach D.W., then the statute would allow disclosure.

**3.** On appeal, Sledge raises two additional issues. First, Sledge argues that the trial court erred in denying his motion to dismiss the case for viola-

tion of Alaska Criminal Rule 45. This issue is foreclosed by *Lindsay v. State,* 698 P.2d 659, 662–63 (Alaska App.1985). Second, Sledge also argues that the trial court erred in refusing to refer his case to the three-judge panel for sentencing. Our decision to remand this case for further proceedings may render sentencing issues moot. Consequently, we decline to comment upon them at this time. Should the trial court, on remand, reinstate Sledge's conviction, Sledge may reinstate his sentencing appeal in this court.