Robert **ATKINSON**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–4376.

Court of Appeals of Alaska.

March 11, 1994.

Rehearing Denied April 14, 1994.

Walter Share, Seattle, and Robert Merle Cowan, Kenai, for appellant.

John A. Scukanec, Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Robert M. Atkinson was charged with two counts of misconduct involving a controlled substance in the fourth degree. Atkinson was convicted by a jury of both charges. He now appeals.

On appeal, Atkinson argues that the superior court erred in failing to suppress evidence seized during a search conducted pursuant to an invalid search warrant, in refusing to disclose the juvenile records of the informant whose statements led to the issuance of the warrant, in declining to reopen the evidentiary hearing on Atkinson's motion to suppress in order to allow examination of the informant, in admitting evidence at trial regarding the aggregate weight of marijuana seized from Atkinson's residence, and in refusing to give a lesser-included offense instruction on Count I of the indictment.

## FACTS

On December 7, 1990, Paul Boas, Sr., called the Alaska State Trooper station in Seward and reported to Trooper Bill D. Tyler that he had found marijuana in the bedroom closet of his fifteen-year-old son, P.J. Tyler interviewed Boas and P.J. at the Boas residence approximately an hour later. Tyler spoke first with Boas and then with P.J. in Boas' presence. Tyler tape recorded his interviews.

Boas told the trooper that P.J. had brought home some "very green" marijuana, which had evidently been freshly harvested and had not yet been dried. Boas gave the marijuana to Tyler.

P.J. acknowledged bringing the marijuana home. He said the marijuana came from a house at Mile 23 of the Seward Highway—approximately one-quarter mile from his own house. P.J. admitted entering the house through the basement window on December 5 to steal the marijuana. He said he saw twenty to thirty medium size plants growing in one basement room; four or five very large plants and numerous small plants grew in another. There was also an extensive lighting system. P.J. did not go upstairs.

P.J. further admitted stealing marijuana from this same residence on another occasion during the previous two months. On the previous occasion the marijuana had been growing in a shed that was adjacent to the house. The plants had apparently been moved into the basement due to the cold weather.

P.J. also drew Tyler a map depicting the location of the house. P.J. said he thought the house belonged to Atkinson, but that Atkinson was not living in it at that time. Someone else, whose name P.J. did not know, was currently staying there.

Upon concluding his interviews with Boas and P.J., Tyler showed P.J.'s map to Tom Clark, an acquaintance of Tyler's who had lived in the area for a number of years. Although the map had no names written on it, Clark immediately identified the location P.J. had marked as Atkinson's residence. Clark further told Tyler that Atkinson might not be in town at the time and that a man named Sam might be taking care of the house in Atkinson's absence. Through a subsequent check of utility records, Tyler confirmed that utilities for the house were listed in the name of Robert Atkinson.

Several days after his interview with P.J., Tyler, relying on the foregoing information, applied to Magistrate George Peck for a warrant to search Atkinson's house. Magistrate Peck issued the warrant, finding the information Tyler had received from P.J. to be sufficiently corroborated to establish probable cause. In deciding on the warrant, Magistrate Peck expressly indicated that, for purposes of determining probable cause, he had treated P.J. as a criminal informant whose statements were subject to corroboration under the *Aguilar–Spinelli*[1] test, rather

---

1. See *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

than as a citizen informant whose statements were presumptively credible.

The search warrant was executed on December 11, 1990. During the search, the troopers found numerous marijuana plants in Atkinson's basement, as well as equipment for an extensive marijuana growing operation. Atkinson was home at the time of the search and made a number of inculpatory statements.

Atkinson was subsequently indicted on two counts of misconduct involving a controlled substance in the fourth degree: Count I charged him with manufacturing or possessing with intent to deliver one ounce or more of marijuana, in violation of AS 11.71.-040(a)(2); Count II charged him with simple possession of one pound or more of marijuana, in violation of AS 11.71.040(a)(3)(F).[2] Prior to and during trial, Atkinson made various motions relating to the admissibility of the marijuana seized from his home. He also moved to exclude trial testimony concerning the aggregate weight of the marijuana. Finally, Atkinson requested a lesser-included offense instruction as to Count I. The trial court denied these motions, and, following conviction, Atkinson appealed.

## DISCUSSION

### 1. *Aguilar–Spinelli*

Atkinson argues that Tyler's testimony before the magistrate does not withstand scrutiny under the *Aguilar–Spinelli* test. Specifically, Atkinson contends that Trooper Tyler did not provide sufficient independent corroboration to establish P.J.'s veracity.

■ The *Aguilar–Spinelli* test continues in effect in Alaska for purposes of determining the validity of a warrant based on informant hearsay. *State v. Jones,* 706 P.2d 317, 322 (Alaska 1985); *Kvasnikoff v. State,* 804 P.2d 1302, 1306–07 (Alaska App.1991). This

two-prong test requires that the magistrate be presented with evidence sufficient to make an independent determination as to an informant's basis of knowledge (that the informant's statement is in fact based on first-hand knowledge) and veracity (that the information related by the informant is credible). *State v. Bianchi,* 761 P.2d 127, 130 (Alaska App.1988).

■ Here, P.J. made it clear that the information he gave Tyler concerning the marijuana at Atkinson's house was based on his personal observations. The first prong of *Aguilar–Spinelli* is plainly satisfied. The second prong, veracity, may be satisfied by evidence of the informant's past reliability or by proof of circumstances establishing the credibility of the informant's current statement. Here, no evidence of P.J.'s past reliability was offered to the magistrate. However, there was ample basis for concluding that P.J.'s statement to Tyler was credible.

The most common means of establishing the credibility of a particular statement is through "independent police corroboration of detailed facts in the informant's story." *Elerson v. State,* 732 P.2d 192, 194 (Alaska App.1987) (quoting *Jones,* 706 P.2d at 325 (citations omitted)). All that is necessary is that the "probability of a lying or inaccurate informer [be] ... sufficiently reduced by corroborative facts and observations." *Elerson,* 732 P.2d at 194 (quoting 1 Wayne R. LaFave, *Search and Seizure,* § 3.3(f), at 556–57 (1978)). Corroboration of incriminating facts is not required. *Schmid v. State,* 615 P.2d 565, 576–77 (Alaska 1980); *Elerson,* 732 P.2d at 194; *see also Clark v. State,* 704 P.2d 799, 804 & n. 4 (Alaska App.1985); 1 Wayne R. LaFave, *Search and Seizure,* § 3.3(f), at 683 (2d ed. 1987).

In the present case, P.J.'s story that he had obtained marijuana from Atkinson's

**2.** AS 11.71.040(a) provides, in relevant part:

> (a) Except as authorized in AS 17.30, a person commits the crime of misconduct involving a controlled substance in the fourth degree if the person
>
> ....
>
> (2) manufactures or delivers, or possesses with the intent to manufacture or deliver, one or more preparations, compounds, mixtures,

or substances of an aggregate weight of one ounce or more containing a schedule VIA controlled substance;

> (3) possesses
>
> ....
>
> (F) one or more preparations, compounds, mixtures, or substances of an aggregate weight of one pound or more containing a schedule VIA controlled substance[.]

house was corroborated in numerous particulars. P.J. had in fact been caught possessing marijuana by his father. The marijuana was "green," indicating that it had only recently been harvested. P.J. had told essentially the same story to both his father and Tyler. He had also drawn a map specifying the location of Atkinson's house, which proved to be accurate. P.J. had further provided information concerning the occupants of the house. The information was confirmed by Tyler. Tyler additionally confirmed that the utilities for the house were in fact in Atkinson's name.

■ We need not decide whether these corroborating circumstances would in themselves be sufficient to meet the *Aguilar–Spinelli* test, for they did not stand alone. As the magistrate properly determined, P.J.'s credibility was additionally bolstered by the self-incriminating nature of his statement. It is well settled that the credibility of an informant's statement may be established when the statement is against the informant's penal interest:

> "What is needed is a showing that 'the informant's statements against his own penal interest were closely related to the criminal activity' for which probable cause to arrest or search is being established...." 1 W. LaFave, *Search and Seizure*, § 3.3(c) at 531 (1978). Once the appropriate nexus has been established, the next "fundamental question is whether the informant would have perceived his remarks as highly incriminating."

*Elerson*, 732 P.2d at 194 (quoting LaFave, *supra*, at 531). *See also Bianchi*, 761 P.2d at 130.

In the present case, Atkinson correctly observes that P.J.'s willingness to admit possessing marijuana might not in itself be sufficiently against his penal interests to establish the truthfulness of his claim that the marijuana came from Atkinson's house. P.J. had been caught in possession of marijuana; he arguably had little to lose by admitting his possession and much to gain by naming someone else who could also be blamed. Courts have consistently been reluctant to recognize such statements as admissions as against penal interest. *Cf. Shakespeare v.*

*State*, 827 P.2d 454, 458 (Alaska 1992); *Jones*, 706 P.2d at 325.

But P.J. did not merely admit possessing marijuana. In recounting the story that implicated Atkinson, P.J. went far beyond an admission of the misconduct for which he had already been apprehended: he acknowledged engaging in a series of burglaries at Atkinson's house that had as yet evidently gone undetected. Whereas P.J.'s admission of possessing marijuana arguably was not against his penal interest, his admission of burglary plainly was. Because P.J.'s statement implicating Atkinson was an integral part of his admission of burglary, the trial court could properly find P.J.'s statement credible as a declaration against penal interest. *See Morrow v. State*, 704 P.2d 226, 229 (Alaska App.1985). *See also* 1 Wayne R. LaFave, *Search and Seizure*, § 3.3(c), at 648 & n. 163 (2d ed. 1987).

Atkinson nonetheless attempts to discredit P.J.'s statement, suggesting that Tyler impliedly promised to give P.J. favorable treatment if he cooperated, thereby inducing P.J. to implicate Atkinson. The record, however, does not support Atkinson's claim that Tyler offered P.J. favorable treatment. More significantly, even if Atkinson's claim were accepted it would be unavailing, since the record establishes that P.J. first admitted the Atkinson burglaries before Tyler's purported inducement occurred.

Given that P.J.'s statement was against his penal interest and was to a large extent corroborated, we conclude that the information presented to Magistrate Peck was sufficient to satisfy the *Aguilar–Spinelli* test and that the magistrate did not abuse his discretion in finding probable cause to issue the disputed search warrant.

2. *Material misstatements and omissions*

■ Atkinson next claims that the state made significant misstatements to Magistrate Peck and omitted material information in applying for the warrant. Atkinson claims that Tyler: 1) falsely assured the magistrate that no deal had been made with P.J.; 2) misled the magistrate by implying that P.J. would be referred to the juvenile authorities

when in fact, he was not; 3) failed to inform the magistrate that P.J. had a delinquency petition pending against him for burglary and trespassing (a case that Tyler himself had investigated); and 4) failed to fully inform the magistrate about P.J.'s history of drug problems.

Atkinson could prevail on his claim only if the record supported a finding that the purported misstatements or omissions were intentional or reckless and that they were material. *See State v. Malkin,* 722 P.2d 943, 946 (Alaska 1986). Assuming *arguendo* that Tyler misstated or omitted information, the record suggests that he did not do so recklessly or intentionally. More significantly, the alleged misstatements and omissions could not properly have been deemed material, either individually or collectively: when the misstatements are deleted from the record and the omissions added, ample evidence remains to support a finding of probable cause.

In this regard, it is crucial to observe that the supposed misstatements and omissions relate wholly to P.J.'s credibility. They portray P.J. as a dishonest person who had much to gain and little to lose in dealing with the troopers. The collective effect of this information, however, is simply to place P.J. in the shoes of a typical criminal informant. This information might have had a significant bearing on the determination of probable cause if the magistrate had assumed that P.J. was a person whose testimony was presumptively credible. But here, because Magistrate Peck treated P.J. as a criminal informant whose statements were presumptively incredible, the disputed misstatements and omissions could have done nothing more than confirm what the magistrate had already presumed to be true.

The trial court did not err in rejecting Atkinson's claims of material misstatements and omissions.

### 3. *Motions for discovery and to reopen proceedings*

Atkinson moved numerous times for discovery of P.J.'s juvenile records. He argued that the information was relevant to establish P.J.'s motives for claiming that he found marijuana in Atkinson's house and to show that he was seeking to curry favor with the police. The court denied Atkinson's discovery motion after conducting an *in camera* review of the records. Atkinson also moved for a deposition of P.J. prior to the evidentiary hearing on his motion to suppress. The court denied this motion. Atkinson then moved to subpoena P.J. as a witness at the evidentiary hearing. The court deferred ruling on this motion, stating that, once it had heard testimony from the state's witnesses at the suppression hearing, it would determine whether P.J. should testify.

At the time of the evidentiary hearing, however, P.J. was unavailable, and his whereabouts were evidently unknown. The court took Atkinson's motion to suppress under advisement without hearing from P.J. Prior to trial, Atkinson requested that the evidentiary hearing on his motion to suppress be reopened, claiming that P.J. had been located and was available. The court declined to hear P.J.'s testimony and eventually denied the motion to suppress.

■ The standard governing disclosure of confidential information to the defendant in a criminal case is as follows:

[A]ny material evidence should be disclosed to the defendant. Material evidence means any evidence where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

*Sledge v. State,* 763 P.2d 1364, 1369 (Alaska App.1988) (citations omitted).

■ A party's right to call witnesses at an evidentiary hearing is subject to the trial court's discretion. *See Davis v. State,* 766 P.2d 41, 43 (Alaska App.1988). We have nevertheless emphasized that "[The] discretion [to exclude witnesses] may be exercised only after the court has made an adequate inquiry into all of the surrounding circumstances, and failure of the trial court to inquire into the circumstances constitutes error." *Smaker v. State,* 695 P.2d 238, 240 (Alaska App.1985) (quoting *State v. Bright,*

229 Kan. 185, 623 P.2d 917, 923 (1981)). We have similarly emphasized that "[t]he right of a defendant to present his own witnesses to establish a defense is a fundamental element of due process of law." *Smaker,* 695 P.2d at 240 (citing *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967)).

■ In the present case, however, Atkinson's arguments concerning the court's denial of his requests to allow discovery of P.J.'s juvenile files and to allow P.J. to testify on the suppression issue are disposed of by our conclusion that the various alleged misstatements and omissions pertaining to P.J.'s lack of credibility had no material bearing on the issue of probable cause. In ruling on the issue of probable cause, Magistrate Peck started from the presumption that P.J. was not credible. Applying the *Aguilar–Spinelli* criteria, the magistrate nonetheless found sufficient circumstantial guarantees of accuracy to justify the conclusion that P.J.'s statement to Tyler was probably truthful.

The additional evidence concerning P.J.'s lack of credibility that Atkinson hoped to gain through disclosure of P.J.'s juvenile records and through calling P.J. to testify at the suppression hearing could have added nothing significant on the issue of probable cause, since it would only have confirmed the presumption adopted by Magistrate Peck at the outset of the warrant hearing, and since it would not have altered the validity of the magistrate's *Aguilar–Spinelli* determination, which depended on circumstantial guarantees of accuracy rather than on representations as to P.J.'s character for truthfulness.

■ Indeed, even assuming P.J. had appeared at the evidentiary hearing and had testified that his statement to Tyler was wholly fabricated, this would not have negated the showing of probable cause upon which the warrant was issued, since probable cause depends on an objective assessment of the testimony actually before the issuing court, not on an after-the-fact evaluation of the actual truthfulness of that testimony.[3] We find no abuse of discretion in the court's denial of Atkinson's discovery motions, or in its denial of his request to reopen the evidentiary hearing to allow P.J. to testify.

### 4. ·*Failure to record P.J.'s interview in its entirety*

Tyler recorded the formal interviews he conducted with P.J. and P.J.'s father on December 7, 1990. However, Tyler's preliminary discussions with them were not recorded, and his recorder was turned off at two points during P.J.'s interview. On appeal, Atkinson urges us to extend the rule of *Stephan v. State,* 711 P.2d 1156 (Alaska 1985) to this situation. In *Stephan,* the supreme court held that

> an unexcused failure to electronically record a custodial interrogation conducted in a place of detention violates a suspect's right to due process, under the Alaska Constitution, and ... any statement thus obtained is generally inadmissible.

*Id.* at 1158 (footnotes omitted).

■ Atkinson advances this argument for the first time on appeal;[4] accordingly, we

---

**3.** Atkinson's theory of relevance and his offers of proof before the trial court focused on his desire to explore P.J.'s potential motives for fabricating an accusation against Atkinson, particularly the possibility that P.J. might have construed certain statements by Tyler as inducements to fabricate a story. As we have already indicated, the record establishes that any remarks by Tyler that P.J. might have construed as inducements to cooperate occurred only after P.J.'s initial admission that he obtained the marijuana by committing a burglary. In moving to suppress, Atkinson did not allege, or offer any reasonable basis to believe, that P.J.'s testimony or juvenile records might establish an intentional deception of the magistrate by Tyler—that is, Tyler's knowledge of and participation in a fabricated accusation against Atkinson. Under the circumstances, the

record provides no realistic basis for concluding that P.J. could have added anything of substance on the issue of probable cause apart from information relating to his own lack of credibility.

On appeal, Atkinson does not contend that he was deprived of the opportunity to call P.J. as a witness at trial. It appears that, at trial, the only relevant information P.J. might have provided was that Atkinson did not appear to be residing at home when P.J. stole the marijuana. The trial court instructed the jury, without objection, that P.J. would have testified to this effect had he been called.

**4.** Atkinson's claim that he argued the *Stephan* issue below misrepresents the record. Atkinson merely cited *Stephan* below by analogy to sup-

review only for plain error. *Moreau v. State,* 588 P.2d 275, 279–80 (Alaska 1978). Since P.J. was not in custody or a place of detention when his interview occurred, the underlying rationale of *Stephan* appears to have little bearing on this case. Furthermore, *Stephan* was meant to protect the due process interests of the person interviewed; the case never suggested a need to record to protect the due process rights of third parties. Finally, a finding of plain error in the context of this case would be appropriate only in exceptional circumstances. *Moreau v. State,* 588 P.2d 275, 280 (Alaska 1980) (court will ordinarily not treat search and seizure issues as plain error). There are no exceptional circumstances here. We find no merit to Atkinson's claim.

### 5. *Evidence concerning aggregate weight of marijuana*

The marijuana plants seized from Atkinson's residence were dried and packaged by troopers at the trooper station in Seward. At trial the evidence established that the troopers separated "stems and stuff" from "the leaves and buds," and then mailed the marijuana to the state crime lab in Anchorage to be weighed and analyzed. Catherine E. Saft, a forensic chemist at the crime lab, testified that she weighed the marijuana in the condition in which it was received from the troopers. Saft stated that the lab's policy in weighing marijuana was to remove large stems that would contribute substantially to the weight. Saft said she did not remove the stems and twigs from the marijuana seized in Atkinson's residence, because they were "relatively small."

Over Atkinson's objection, Saft was then allowed to testify that the aggregate weight of the marijuana was approximately three pounds. Atkinson contends that the court erred in admitting Saft's testimony concerning aggregate weight, because the marijuana she weighed included stems and twigs. Atkinson relies on the statutory definition of marijuana, which is set forth in AS 11.71.-900(14):

"marijuana" means the seeds, and leaves, buds, and flowers of the plant (genus) Cannabis, whether growing or not; it does not include the resin or oil extracted from any part of the plants, or any compound, manufacture, salt, derivative, mixture, or preparation from the resin or oil, including hashish, hashish oil, and natural or synthetic tetrahydrocannabinol; it does not include the stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the stalks, fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination[.]

In *Gibson v. State,* 719 P.2d 687, 690 (Alaska App.1986), however, we made it clear that this statutory definition is not controlling when the aggregate weight of marijuana is at issue in a given case; rather, the issue is governed by AS 11.71.080, which provides:

For purposes of calculating the aggregate weight of a live marijuana plant, the aggregate weight shall be the weight of the marijuana when reduced to its commonly used form.

Under this provision, determining aggregate weight does not require marijuana to be reduced to its purest, unadulterated statutory form; aggregate weight must instead be based on the "commonly used form."

In the present case, the jury was informed of the statutory definitions of marijuana and aggregate weight, and it heard abundant testimony concerning the form in which Atkinson's marijuana was shipped and weighed. There was ample evidence to permit the jury to determine whether the marijuana was in "commonly used form" when it was weighed and whether its aggregate weight in that form exceeded the statutory minimums.

Under these circumstances, the trial court did not abuse its discretion in allowing Saft to testify concerning her measurement of aggregate weight. Any uncertainty arising from her testimony created factual questions for the jury, not grounds for exclusion.

port his argument that the two gaps in the tape recording rendered the entire interview suspect. At no time did Atkinson argue that the tape recording requirement of *Stephan* was applicable or was violated.

### 6. Lesser-included offense instruction on Count I

In Count I of the indictment, Atkinson was charged with misconduct involving a controlled substance in the fourth degree based on the theory that he manufactured or possessed with intent to deliver one ounce or more of marijuana, in violation of AS 11.71.-040(a)(2). Atkinson requested an instruction allowing the jury to consider his guilt on a lesser-included offense, based on simple possession,[5] arguing that the jury might find him guilty of possessing the marijuana in his home without also finding that he manufactured or intended to sell or distribute it. The trial court denied the lesser-included offense instruction.

On appeal, the parties dispute the propriety of the trial court's ruling. In context, however, the issue appears to be academic for reasons neither party addresses.

■ The two counts for which Atkinson was convicted involved alternative theories of the same crime: misconduct involving a controlled substance in the fourth degree. As we have already indicated, Count I alleged Atkinson's guilt of the offense for manufacturing (growing) or possessing with intent to deliver one ounce or more of marijuana, AS 11.71.040(a)(2); Count II alleged his guilt of the same offense for simple possession of one pound or more, AS 11.71.040(a)(3)(F).

Neither in the indictment nor in its proof at trial did the state attempt to differentiate the marijuana at issue in the two counts; the charge in each count was evidently based on the entirety of the marijuana seized from Atkinson's home during the execution of the search warrant on December 11. The differing amounts Atkinson was alleged to have possessed in Counts I and II merely reflect the differing statutory minimums applicable under the state's alternative theories of guilt.

■ Because Counts I and II alleged alternative statutory theories of the same crime and were based on a single act of possession involving the same marijuana, Atkinson could properly be convicted of but one offense. Under these circumstances, the trial court's entry of a judgment convicting him of two separate counts was barred by double jeopardy and amounted to plain error. Cf. People v. Brown, 185 Colo. 272, 523 P.2d 986, 988 (1974) (separate convictions for simple possession and possession with intent to sell the same drugs barred by double jeopardy when they arise from a single act of possession), overruled on other grounds, Villafranca v. People, 194 Colo. 472, 573 P.2d 540 (1978).[6]

Since Atkinson does not dispute the trial court's instructions as to Count II, and since his conviction for two counts was improper regardless of whether he was entitled to a lesser-included offense instruction on Count I, we direct the trial court, on remand, to

---

**5.** See AS 11.71.050(a)(3)(E) (defining simple possession of eight ounces or more of marijuana as fifth-degree misconduct involving a controlled substance, a class A misdemeanor), and AS 11.-71.060(a)(4) (defining simple possession of four ounces or more as sixth-degree misconduct, a class B misdemeanor).

**6.** An example of the same problem in a somewhat more familiar statutory setting makes it easier to see the inappropriateness of convicting on more than one count. Alaska Statute 11.41.-220 defines several alternative ways of committing third-degree assault, including recklessly placing a person in fear of imminent serious physical injury by means of a dangerous instrument (subparagraph (a)(1)(A)) and recklessly causing physical injury by means of a dangerous instrument (subparagraph (a)(1)(B)). An offender who recklessly assaults another person with a dangerous instrument, simultaneously placing the victim in fear and causing physical injury, can certainly be prosecuted for third-degree as-

sault under both statutory theories. However, only one third-degree assault occurs. Because the alternative statutory theories define the same offense and the offender's conviction results from a single criminal act involving a single victim, conviction for more than one count of assault is barred.

Arguably double jeopardy might not have precluded separate convictions if it were clear that Atkinson's conviction on Count I was based on his manufacture of the marijuana rather than on his possession of it, since different criminal acts might then have been found. See Davis v. State, 766 P.2d 41, 45–46 (Alaska App.1987). However, neither the jury instructions nor the state's argument at trial limited the jury to convicting based on the theory of manufacture. Since the record is ambiguous on the issue, the ambiguity must be resolved in Atkinson's favor. Cf. Clifton v. State, 758 P.2d 1279, 1285 (Alaska App.1988).

enter an amended judgment reflecting conviction only on Count II. Because amending the judgment in this manner will render Atkinson's lesser-included offense argument moot, we need consider it no further.

In all other respects, the judgment is AFFIRMED.