**Stephan H. IVANOFF, Sr., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7278.

Court of Appeals of Alaska.

Sept. 29, 2000.

---

Paul E. Malin, Assistant Public Defender, Anchorage, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Ben M. Herren, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Stephan H. Ivanoff, Sr., appeals his conviction for fourth-degree misconduct involving a controlled substance.[1] Ivanoff argues that the superior court erred in concluding that probable cause supported the issuance of a

---

1. AS 11.71.040(a)(2).

search warrant for his home. Ivanoff also argues that the court erred in concluding that execution of the warrant at night was authorized. Because we conclude that the record before the magistrate does not support a probable cause finding, we reverse.

*Facts and proceedings*

On Friday, February 20, 1998, at 7:30 p.m., Robert Cyr called the Kotzebue Police Department to report that his wife, Annie Cyr, had purchased a bottle of whiskey from someone in town. The purchase was unlawful because Kotzebue was a local option community where the sale of alcohol was prohibited. About thirty minutes later, Corporal Eric Swisher and Officer Rocky Norris of the Kotzebue Police Department went to Cyr's home and spoke to Annie Cyr about the purchase. She said that she bought the alcohol from Otto Kenworthy.

Later in the evening, Swisher and Norris went to Kenworthy's home to speak with him. They told Kenworthy that he was not under arrest and that he did not have to talk to them. Nevertheless, Kenworthy told them that he had sold a bottle of whiskey to Annie Cyr earlier that day.

Both officers noticed that Kenworthy smelled like marijuana. They saw a rolled-up baggie sticking out of the chest pocket of his bib overalls. Kenworthy told the officers that he was not selling marijuana, but that he had bought the "quarter bag" of marijuana for $100 from Ivanoff earlier that day at Ivanoff's house.

Kenworthy said that he went to Ivanoff's home, knocked on his door, and asked him whether he had any marijuana to sell. He gave Ivanoff two $50 bills, and Ivanoff gave him a baggie of marijuana in return. Kenworthy claimed that Ivanoff retrieved the marijuana from a green fanny pack lying next to him on the couch. Kenworthy also told the officers that Ivanoff's house was the green house across from 678 Caribou Drive. Kenworthy said that when he purchased marijuana from Ivanoff at other times, Ivanoff retrieved the marijuana from a back room in his house. Finally, Kenworthy told the officers that Ivanoff shipped the marijuana to Kotzebue on Alaska Airlines and that

Ivanoff sold marijuana to several other people in town.

Swisher and Norris returned to the police station at about 11:00 p.m. They discussed the case with Officer Pat Octuck, the department's drug enforcement investigator. Octuck said that during an investigation of Kenneth Hall, Hall told Octuck that Ivanoff was selling drugs. Hall was known as a major drug dealer in Kotzebue and had been convicted of selling drugs several times.

At about 2:00 a.m. on February 21, 1998, the officers appeared before Magistrate Sherry A. Clark and applied for a search warrant. Kenworthy did not appear before the magistrate. The officers submitted an affidavit in support of the application. Magistrate Clark reviewed the affidavit and initially indicated:

> I have read your affidavit and I find that I have probable cause for a search warrant, but I just want to ask a couple of questions about either the veracity or the truthfulness of your informant, or any possibility of corroborating the informant's statement. [S]o if you have information on Otto Kenworthy ... or [Stephan] Ivanoff, I need for you to tell me about it.

Swisher testified that he heard from Officer Octuck that while investigating Hall on a separate drug case, Hall mentioned that Ivanoff was selling drugs. Magistrate Clark stated: "I think that will work because that way we have some corroboration of the fact that Mr. Ivanoff does sell, or possibly sell, and it would corroborate the informant's statement."

Norris then testified that Kenworthy was advised that he was not under arrest and that he did not have to speak if he did not want to. Norris also testified that Kenworthy had voluntarily admitted that he sold alcohol and that Kenworthy's statements were against his penal interest. Magistrate Clark noted that Kenworthy had personal knowledge and then found "probable cause to believe that on the premises [of Ivanoff's home] there is ... marijuana which is evidence of the crime of misconduct involving a controlled substance in the fifth degree."

The magistrate also directed that the warrant could be served at night. The officers executed the warrant at 2:27 a.m., and seized more than 300 grams of marijuana and $4,600 in cash.

Ivanoff was indicted on a charge of fourth-degree misconduct involving a controlled substance [2] for possessing one ounce or more of marijuana with intent to deliver. Ivanoff moved to suppress the evidence obtained as a result of the search warrant. Superior Court Judge Richard H. Erlich concluded that Kenworthy's statements qualified as admissions against his penal interest, sufficient to meet the veracity prong of the *Aguilar–Spinelli* test [3] and denied Ivanoff's motion.

Ivanoff pleaded no contest, reserving his right to appeal the denial of his motion to suppress.[4] Judge Erlich imposed a non-presumptive sentence of 18 months with 12 months suspended. This appeal followed.

*Discussion*

*Did the police present sufficient evidence to satisfy the Aguilar–Spinelli test?*

The warrant to search Ivanoff's home was issued on the basis of information supplied to the police by an informant—Otto Kenworthy. Ivanoff contends that Kenworthy's credibility was not sufficiently established to support a finding of probable cause.

In addition to the officers' testimony, Magistrate Clark was presented with an affidavit, which stated in relevant part:

> [T]he facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: On February 20, 1998, Officers Rocky Norris and Eric Swisher received a call from Robert Cyr about his wife, Annie Cyr, buying a bottle of R & R whiskey from Otto Kenworthy. When Officer[s] Norris and Swisher met with Otto Kenworthy, he told the Officers that he sold three bottles of R & R whiskey on 02–20–98, one [each] to Annie Cyr, David Davis, and Dan Henry.

The Officers smelled a strong odor of Marijuana on Otto Kenworthy's person. Corporal Swisher saw a rolled-up baggie sticking out of Otto Kenworthy's chest pocket on his bibs. When asked, Otto Kenworthy said that he bought the 'Quarter Bag' of Marijuana for $100.00 from [Stephan] Ivanoff, who lives in the green house across from 678 Caribou Drive, on 02–20–98. (A 'quarter bag' is slang for 3.5–grams of Marijuana.)

Otto Kenworthy said that when he knocked on [Stephan] Ivanoff's door on 02–20–98, he asked [Stephan] Ivanoff if he had any Marijuana. Otto Kenworthy said that he paid [Stephan] Ivanoff two, fifty-dollar bills for the Marijuana. Otto Kenworthy said that [Stephan] Ivanoff took the money and put it into a green Fanny Pack, which was laying on the couch beside [Stephan] Ivanoff[.] [Stephan] Ivanoff [then] took out the baggie of Marijuana from the Fanny Pack and gave it to Otto Kenworthy.

Otto Kenworthy said that he bought Marijuana from [Stephan] Ivanoff a couple of times this month before this and on those separate occasions, [Stephan] Ivanoff went to the back room of the house to get the Marijuana. Otto Kenworthy said that [Stephan] Ivanoff brought the Marijuana up to Kotzebue on Alaska Airlines. Otto Kenworthy told the officers that [Stephan] Ivanoff sells Marijuana [to] several people in town.

Otto Kenworthy told the officers this information against his own personal interest. Otto Kenworthy's statement was tape-recorded. The officers know [Stephan] Ivanoff to live at 668 Caribou Drive[,] Kotzebue, Alaska, which is a green house across from 678 Caribou Drive.

When the State relies on informant hearsay to establish probable cause for a search warrant, a magistrate considering the application must apply the two-prong *Aguilar–Spinelli* test. Under this test, the appli-

**2.** *Id.*

**3.** *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *State v. Jones,* 706 P.2d 317, 324–25 (Alaska 1985).

**4.** *See Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

cant for the search warrant must provide the magistrate .with sufficient information to independently evaluate both the basis of knowledge and veracity prongs of the test.[5]

Both parties agree that Kenworthy asserted sufficient personal knowledge to satisfy the first prong of the *Aguilar–Spinelli* test. According to the search warrant application, Kenworthy had personal knowledge of Ivanoff's possession and sale of marijuana because he purchased some from him earlier that day.

■ However, Ivanoff argues that there was insufficient evidence presented to the magistrate to establish Kenworthy's veracity under the second prong of the test. Under the second prong of the *Aguilar–Spinelli* test, to establish the informant's veracity, the applicant must inform the magistrate of "the underlying circumstances [to support the conclusion] that the informant was credible or that his information was reliable." [6]

■ Informants are divided into two categories under the *Aguilar–Spinelli* analysis: citizen informants and police informants. Both the State and Ivanoff agree that Kenworthy was acting as a police informant when he spoke to the police. Police informants are often associated with the criminal milieu and are subject to mistrust because they may provide tips in exchange for payment, favorable treatment in the criminal process, or personal advantage or revenge.[7] However, a police informant's reliability may be established in the following ways: by demonstrating his past reliability, by independent police corroboration of several detailed facts in the informant's tip, or by the informant's admission against penal interest.[8] Here, the parties agree that no evidence of Kenworthy's past reliability was offered to the magistrate.

Therefore, the discussion turns to determining whether there was another basis to conclude that Kenworthy's statement was credible.

The State argues that three factors cumulatively establish the *Aguilar–Spinelli* veracity prong. First, the State argues that Kenworthy's statement was against his penal interest and made at a time when the police were already able to charge him with a felony offense. Second, the State argues that Kenworthy's statement was independently corroborated by "another specifically identified informant"—Hall's tip to Octuck . about Ivanoff that was relayed by Corporal Swisher. And third, the State argues that Kenworthy's statement contained self-verifying details.

*Were Kenworthy's statements against his penal interest?*

■ In *Elerson v. State,*[9] this court noted that in certain circumstances, an informant's admission against his penal interest can be sufficient to establish credibility.[10]

"What is needed is a showing that 'the informant's statements against his own penal interest were closely related to the criminal activity' for which probable cause to arrest or search is being established...." Once the appropriate nexus has been established, the next "fundamental question is whether the informant would have perceived his remarks as highly incriminating." [11]

Thus, under *Elerson,* Kenworthy's admissions must have been closely related to Ivanoff's criminal activity that was the subject of the search warrant and Kenworthy must have perceived his remarks as highly incriminating.

---

5. *See Jones,* 706 P.2d at 324.

6. *Id.* at 324–25 (citing *Davis v. State,* 499 P.2d 1025, 1029 (Alaska 1972), *rev'd on other grounds,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)).

7. *See Evans v. State,* 550 P.2d 830, 842 n. 35 (Alaska 1976) (quoting *Fresneda v. State,* 483 P.2d 1011, 1015 (Alaska 1971)); *Effenbeck v. State,* 700 P.2d 811, 813–14 (Alaska App.1985).

8. *See Lloyd v. State,* 914 P.2d 1282, 1286 (Alaska App.1996); *Jones,* 706 P.2d at 325; *Davis,* 499 P.2d at 1029.

9. 732 P.2d 192 (Alaska App.1987).

10. *See id.* at 194; *Jones,* 706 P.2d at 325.

11. *Elerson,* 732 P.2d at 194 (quoting 1 Wayne R. LaFave, *Search and Seizure* § 3.3(c), at 531 (1978)).

Kenworthy's admission that he bought the marijuana from Ivanoff establishes the nexus between his admissions and Ivanoff's criminal activity. Moreover, Ivanoff has not argued that this nexus was lacking.

Ivanoff argues that Kenworthy would not necessarily have viewed his statements as highly incriminating. Kenworthy indicated where and how he purchased marijuana from Ivanoff, both in the current occasion and on previous occasions. The State claims that Kenworthy's admissions could conceivably support his prosecution for soliciting Ivanoff to sell him marijuana under AS 11.31.110 [12] and AS 11.71.050.[13] But Kenworthy's potential liability for solicitation is dubious because, under AS 11.16.120(b)(2),[14] a purchaser of controlled substances is not legally accountable when his conduct is inevitably incidental to the commission of the offense.[15] The State also points out that Kenworthy could be prosecuted for possession of marijuana under AS 11.71.060(a)(1). But this charge is a class B misdemeanor and a minor offense compared to the potential crime that was the subject of discussion between the police and Kenworthy: sale of alcohol in a local-option area, a class C felony.[16]

The State also argues that because Kenworthy was subject to prosecution for the alcohol offense, his statement is more credible because he risked disfavor with the prosecution if his tip was false. We recognized the potential merit of this principle in *State v. Bianchi.*[17] There we noted Professor La-Fave's analysis that an informant is consid-ered more reliable when he makes a statement against penal interest knowing that the police have evidence to charge him with a crime:

> [O]ne who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys. Thus, where the circumstances fairly suggest that the informant "well knew that any discrepancies in his story might go hard with him," that is a reason for finding the information reliable.[18]

Kenworthy knew at the time he made these statements about purchasing marijuana that the police were in a position to charge him with the felony of selling alcohol in a local option area.[19] But it is not clear whether Kenworthy believed he would face any official displeasure if, when Ivanoff's house was searched, the police found no marijuana. The police already suspected that it might be too late to catch Ivanoff with the marijuana. When the officers applied for the warrant for Ivanoff's house, they told the magistrate that it was essential to serve the warrant quickly because they feared that Ivanoff's supply of marijuana would soon be sold—that very night—because it was a payday and the beginning of a weekend. This being the case, it does not seem likely that Kenworthy would face adverse consequences if the search failed to turn up evidence to substantiate his statements about Ivanoff's selling marijuana.

Kenworthy's statement did contain admissions that he possessed marijuana in addition to the crime for which the police were

---

12. Alaska Statute 11.31.110(a) provides:

     A person commits the crime of solicitation if, with intent to cause another to engage in conduct constituting a crime, the person solicits the other to engage in that conduct.

13. Alaska Statute 11.71.050(a)(2) provides:

     [A] person commits the crime of misconduct involving a controlled substance in the fifth degree if the person ... manufactures or delivers, or possesses with the intent to manufacture or deliver, one or more preparations, compounds, mixtures, or substances of an aggregate weight of less than one-half ounce containing a schedule VIA controlled substance, for remuneration[.]

14. Alaska Statute 11.16.120(b)(2) provides:

     Except as otherwise provided by a provision of law defining an offense, a person is not legally accountable for the conduct of another constituting an offense if the offense is so defined that the person's conduct is inevitably incidental to its commission.

15. *See State v. Burden,* 948 P.2d 991, 992–93 (Alaska App.1997).

16. *See* AS 04.16.200(b).

17. 761 P.2d 127 (Alaska App.1988).

18. *Id.* at 131 (quoting 2 Wayne R. LaFave, *Search and Seizure* § 3.3(c), at 129 (3d ed.1996)).

19. *See* AS 04.11.010; AS 04.16.200(b).

interviewing him (the alcohol violation). In *Atkinson v. State*,[20] a juvenile informant admitted that he possessed marijuana after his father reported him to the police.[21] The juvenile told the police that he had taken marijuana from Atkinson's house more than once after breaking in with the intention of stealing the marijuana.[22] We noted that the juvenile's admission to possessing marijuana might not have been sufficiently against his penal interest to establish the reliability of his tip that there was marijuana growing in the defendant's home.[23] However, the informant admitted to far more than "the misconduct for which he had already been apprehended: he acknowledged engaging in a series of burglaries at [the defendant's] house that had as yet evidently gone undetected."[24] This court held that this admission was clearly against the juvenile's penal interest.[25]

Kenworthy's admission that he bought marijuana from Ivanoff on a few occasions and particularly on the day in question hardly incriminated Kenworthy to the extent of the admission in *Atkinson*. Kenworthy did admit that he purchased marijuana from Ivanoff a few times and obviously the police found him in possession of three grams at home. But we noted in *Atkinson* that an informant caught in possession of marijuana has "little to lose by admitting his possession and much to gain by naming someone else who could also be blamed."[26] We also noted that courts are reluctant to recognize these types of statements (by drug informants) as admissions against an informant's penal interest.[27] Furthermore, there is no evidence in this record nor any findings that Kenworthy, in fact, understood that his statements about the marijuana were particularly incriminating. We conclude that the information about Kenworthy's statements submitted

to the magistrate did not establish that Kenworthy would have viewed his statements as particularly incriminating. Therefore, Kenworthy's statements do not qualify as admissions against penal interest.

■ The State also argues that the police had independent corroboration of Kenworthy's tip from Hall's comment to Officer [Octuck]. Swisher's testimony at the search warrant hearing that he "heard from Officer [Octuck] . . . with the Kotzebue Police Department that while investigating Kenneth Hall on [a] separate drug case, he had mentioned that . . . Ivanoff was selling drugs." However, in his final order, Judge Erlich based his denial of the suppression motion solely on his finding that Kenworthy made statements against his penal interest. Nevertheless, the State argues that Hall's statement provided additional "cross-corroboration" for Kenworthy's admission.

■ "For purposes of the *Aguilar–Spinelli* doctrine, the veracity of a statement given by a police informant whose reliability is unknown may be established by a corroborating statement from another informant[.] 'Cross-corroboration among informants is a well-accepted method of demonstrating the validity of the information given.' "[28] However, in *Carter v. State*,[29] we noted that cross-corroboration does not enhance credibility when it involves "[t]he mere repetition of a conclusory accusation."[30] Here, Hall's statement was a flat claim that Ivanoff sold drugs without any support for that conclusion. Thus, Hall's statement that Ivanoff sold drugs is a "conclusory allegation" and does not qualify as cross-corroboration.

■ The State also argues that Kenworthy's statements were "self-verifying"; that

**20.** 869 P.2d 486 (Alaska App.1994).

**21.** *See id.* at 489.

**22.** *See id.*

**23.** *See id.* at 491.

**24.** *Id.*

**25.** *See id.*

**26.** *Id.*

**27.** *See id.*

**28.** *Lewis v. State*, 862 P.2d 181, 186 n. 5 (Alaska App.1993) (quoting *State v. Prince*, 760 P.2d 1356, 1359–60 (Or.App.1988) (*en banc* )).

**29.** 910 P.2d 619 (Alaska App.1996).

**30.** *Id.* at 625.

is, the statements, by themselves, established Kenworthy's reliability because they contained a "wealth of details" concerning Kenworthy's purchase of marijuana from Ivanoff. The detail contained in an informant's tip can be used to establish the personal knowledge prong of the *Aguilar–Spinelli* test,[31] but it cannot be used to establish the veracity or credibility prong. This point is explained by Professor LaFave in this treatise on the law of search and seizure:

> [T]he self-verifying detail test should be used only with respect to the basis of knowledge and not with respect to veracity.... As explained in *Stanley v. State*,[32]
>
> > the "self-verifying detail" technique cannot repair a defect in the "veracity" prong. The notion that great detail implies personal observation rather than the overhearing of barroom gossip, presupposes an honest informant. If the informant is concocting a story out of whole cloth, he could fabricate in fine detail as easily as with rough brush strokes. Minute detail[ ] tells us nothing about "veracity." [33]

We therefore reject the State's argument that Kenworthy's credibility was established by the detail of his statements.

From our review of the record, we conclude that the record before the magistrate did not satisfy the *Aguilar–Spinelli* test. Therefore, the search warrant was not based on probable cause. Because the warrant was invalid, we need not reach Ivanoff's claim that the magistrate should not have authorized the execution of the warrant at night.

*Conclusion*

The judgment of the superior court is REVERSED.

---

**31.** *See, e.g., Schmid v. State*, 615 P.2d 565, 574–75 (Alaska 1980).

**32.** 19 Md.App. 507, 313 A.2d 847 (1974).

**33.** 2 Wayne R. LaFave, *Search and Seizure* § 3.3(e), at 156–57 (3d ed.1996).