Roy **HUGO, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5374.**

Court of Appeals of Alaska.

Aug. 11, 1995.

**1200**

Dick L. Madson, Fairbanks, for appellant.

Joseph S. Slusser, Asst. Dist. Atty., Barrow, Harry L. Davis, Dist. Atty., Fairbanks, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

After police found several bags of marijuana in his luggage, Roy Hugo pleaded no contest to sixth-degree misconduct involving a controlled substance, AS 11.71.060(a). Under *Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974), Hugo preserved his right to appeal the district court's denial of his motion to suppress the evidence against him. We now affirm Hugo's conviction.

The issue on appeal concerns the validity of the search warrant that authorized the police to search Hugo's luggage. North Slope Borough Public Safety Officer Chris Dunbar applied for the warrant. His testimony to Magistrate Daniel N. Cadra was as follows:

Dunbar had been at the airport in Anaktuvuk Pass the previous evening. While Dunbar was there, he saw Hugo's wife pass an envelope to the pilot of a plane. When Dunbar asked her what the envelope contained, Hugo's wife told Dunbar that she was sending Hugo his watch so that he could wake up on time.

A couple of hours later, an informant told Dunbar that Hugo had gone to Fairbanks and would return the next day with drugs and alcohol. The informant told Dunbar that Hugo had been selling marijuana from his home, and that Hugo would be returning shortly with two more bags of marijuana.

About two hours later that same evening, a second informant called Dunbar. This informant had provided information to Dunbar in the past. The informant told Dunbar that Hugo would return to Anaktuvuk Pass the next day with marijuana as well as a couple of jugs of alcohol. The informant added that, the last time Hugo had brought marijuana to Anaktuvuk Pass, he had concealed it in his coat.

Dunbar further informed the magistrate that he knew (from personal knowledge) that there had been alcohol in Anaktuvuk Pass following Hugo's return from his last trip out of the village two weeks before. At that time, Dunbar had seen both Hugo and his wife intoxicated.

Magistrate Cadra asked Dunbar about the first informant. Dunbar replied that this first informant had never given him information before, and therefore Dunbar could not say that the informant was credible. However, Dunbar told the magistrate that he knew of no reason to doubt the first informant's credibility. Dunbar also stated that this informant was not being paid or given concessions for the information.

Magistrate Cadra also asked about the second informant. Dunbar testified that the second informant had given him reliable information in the past, that this informant was a respected member of the community, and that the informant was someone Dunbar would readily believe.

Based on Dunbar's testimony, Magistrate Cadra found probable cause to believe that Hugo would be carrying marijuana when he returned to Anaktuvuk Pass, and he issued the warrant authorizing the police to search Hugo's person and luggage. On appeal, Hugo argues that Dunbar's testimony failed to establish probable cause for the issuance of the warrant.

■ Under Alaska law, the adequacy of a search warrant application is evaluated under the *Aguilar/Spinelli* test. *State v. Jones*, 706 P.2d 317, 322 (Alaska 1985). *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Under the *Aguilar/Spinelli* test, to the extent that the search warrant application rests on hearsay, the government must satisfy a two-prong test for each hearsay declarant. First, the government must establish that the hearsay declarant obtained his or her knowledge in a reliable manner (generally, through first-hand observation) and is not just speculating or repeating gossip. Second, the government must establish that the hearsay declarant is a credible person; this prong may be met by showing reasons to believe that the informant is a trustworthy person, or by showing that the informant's information has been independently corroborated. *Jones*, 706 P.2d at 323–25.

In Hugo's case, the search warrant application relied on Dunbar's personal observa-

tions (which are not subject to *Aguilar/Spinelli* analysis; *see Kvasnikoff v. State*, 804 P.2d 1302, 1306 n. 3 (Alaska App.1991)) and on the information Dunbar received from the two anonymous informants. With respect to these two informants, Hugo argues that neither prong of the *Aguilar/Spinelli* test was met.

■ Hugo first contends that the government failed to show that the informants were relaying information that they had obtained in a reliable way (e.g., first-hand). It is true that, during Dunbar's testimony, he never asserted that his informants had first-hand knowledge of the matters under consideration. However, this first prong of the *Aguilar/Spinelli* test may be established by inference if an informant furnishes the sort of detail that generally could be obtained only through personal knowledge. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *Schmid v. State*, 615 P.2d 565, 574 (Alaska 1980).

■ Here, the first informant named Hugo's destination, identified the day on which Hugo would be returning to Anaktuvuk Pass, told Dunbar that Hugo would be bringing back both marijuana and liquor, and even told Dunbar how many bags of marijuana Hugo would be carrying when he returned. The second informant likewise identified the day of Hugo's return, told Dunbar that Hugo would be carrying both marijuana and liquor, and described how Hugo had concealed the contraband in his coat on his last smuggling trip. These details were sufficient to allow Magistrate Cadra to infer that the two informants had personal knowledge of the matters they spoke of.

■ Hugo next contends that the government failed to establish that the two informants were trustworthy (i.e., that they were credible sources of information). With respect to the first informant, Hugo points out that Dunbar admittedly had not dealt with this informant before and could not say that the informant was credible. With respect to the second informant, Hugo concedes (based on Dunbar's testimony) that this second informant was a presumptively credible "citi-

zen informant" for purposes of the *Aguilar/Spinelli* test. Nevertheless, Hugo points out, even when information is furnished by a citizen informant, some details of the information must be corroborated before *Aguilar/Spinelli* is satisfied. *Erickson v. State*, 507 P.2d 508, 518 (Alaska 1973).

We conclude, however, that Magistrate Cadra could properly find this second prong satisfied. Both informants reported to Dunbar that Hugo had left town; Dunbar independently knew this from his encounter with Hugo's wife at the airport. Each of the informants told Dunbar that Hugo would be returning the next day and that he would be carrying both marijuana and liquor. Dunbar independently knew that Hugo and his wife had been intoxicated following Hugo's return from his last trip outside the village just two weeks before. This information tended to corroborate the two informants' assertions that Hugo was smuggling alcohol into the village. Moreover, the fact that Dunbar received the same information from two separate sources tends to provide corroboration for each informant's tip. *See Davenport v. State*, 568 P.2d 939, 949 (Alaska 1977) ("Although the reliability of the informant had not been established in the past, his tip was independently corroborated by information [received] from two 'citizen informants,' persons whose credibility may be considered less questionable than that of an unnamed and possibly criminal police contact."); *Lewis v. State*, 862 P.2d 181, 186 n. 5 (Alaska App. 1993) ("For purposes of the *Aguilar-Spinelli* doctrine, the veracity of a statement given by a police informant whose reliability is unknown may be established by a corroborating statement from another informant: Cross-corroboration among informants is a well-accepted method of demonstrating the validity of the information given.").

In sum, we conclude that Magistrate Cadra did not abuse his discretion when he issued the search warrant in this case. The judgement of the district court is therefore AFFIRMED.