John P. STAM, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5868.

Court of Appeals of Alaska.

Oct. 11, 1996.

Dick L. Madson, Law Offices of Dick L. Madson, Fairbanks, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

John P. Stam pleaded no contest to two counts of fourth-degree misconduct involving a controlled substance (possession of marijuana with intent to deliver, and possession of more than one pound of marijuana), AS 11.71.040(a)(2) and (a)(3)(F). When Stam entered his pleas, he preserved an issue for appeal under *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974): whether the search warrant issued for his home was supported by probable cause. We conclude that the warrant was not supported by probable cause, and we therefore reverse Stam's convictions.

On July 5, 1994, a police informant (designated "MS94–5") telephoned the Fairbanks office of the Statewide Drug Enforcement Unit (SDEU) and told an officer that Stam was growing marijuana on his homestead north of Galena. Two days later, MS94–5 again contacted the Fairbanks SDEU office; on this occasion, he spoke with Investigator Frank Stepp. MS94–5 repeated his earlier assertion that Stam was growing marijuana, but this time he supplemented the assertion with more information concerning Stam.

MS94–5 told Stepp that Stam lived on a 160–acre homestead located on the north side of the Yukon River, approximately 35 miles upstream from Galena. MS94–5 provided Stepp with an extremely detailed description of Stam's property.

MS94–5 declared that he[1] had been to Stam's homestead a few days earlier. MS94–5 said that there were approximately ninety mature marijuana plants growing on Stam's property, with another ninety to one hundred starter marijuana plants growing indoors. According to MS94–5, Stam grew the marijuana indoors during the winter, and he grew the plants both outside and indoors during the summer—although the outdoor plants were usually covered at night for protection against the cold.

MS94–5 stated that Stam bragged about selling marijuana for a living for a number of years. MS94–5 said that, even though Stam was a fisherman, Stam was not fishing that year because he was making enough money

---

**1.** The record does not reflect MS94–5's sex. The   use of the pronoun "he" is arbitrary.

selling marijuana. He also said that Stam had a "stash" of harvested and dried marijuana, and that Stam had been making sales of marijuana from this stash while MS94–5 was at the homestead. According to MS94–5, Stam stated that he intended to build an underground structure to house his indoor marijuana cultivation.

Following up on MS94–5's information, Investigator Stepp confirmed the location of Stam's property by speaking to Trooper Barrick in Galena and to Fish and Wildlife Officer Ken Piepgrass. Trooper Barrick told Stepp that, according to his maps, Stam's property was located approximately 35 miles upstream from Galena. Both Barrick and Piepgrass confirmed MS94–5's description of the layout of the buildings on Stam's property. In addition, Trooper Barrick informed Stepp that he had previously received information that Stam was growing marijuana on his homestead. Finally, Officer Piepgrass told Stepp that, although Stam had used a fish wheel in the past, there was no sign of a fish wheel in the river at Stam's homestead that season.

On July 8, 1994, Investigator Stepp applied for a search warrant for Stam's property. In his application for the warrant, Stepp presented all the information described above. He additionally noted that MS94–5 denied having a criminal record, and that a search of criminal records on the APSIN computer system confirmed MS94–5's statement.

Based on Stepp's affidavit, District Court Judge Mark I. Wood issued the requested search warrant. The warrant was executed on July 14, 1994; the police discovered and seized 219 live marijuana plants, other marijuana plants that had already been harvested and were drying, marijuana seeds, and cultivation records.

The search warrant for Stam's property was based on the hearsay information contained in Investigator Stepp's affidavit. This being the case, we must use the *Aguilar /Spinelli* test to evaluate the information that Investigator Stepp relied on. *State v. Jones,* 706 P.2d 317, 320–22 (Alaska 1985); *see Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The *Aguilar /Spinelli* test requires us to assess whether Investigator Stepp's affidavit contains sufficient information for the issuing magistrate to independently evaluate (1) whether MS94–5's information was obtained in a reliable fashion and (2) whether MS94–5 was a credible source of information. *Jones,* 706 P.2d at 320–21.

■ Regarding the first prong of the test—the basis of MS94–5's information—it is clear that MS94–5 claimed to have obtained most of his information either firsthand or in direct conversation with Stam. Stam accordingly concedes that Stepp's affidavit meets the first prong of the *Aguilar /Spinelli* test. Stam argues, however, that there was insufficient information in Stepp's affidavit to allow the magistrate to determine MS94–5's credibility.

■ The credibility of an informant can be established by evidence that the informant has given reliable information in the past, or by independent investigation that corroborates the informant's story, or by evidence that the informant is among those persons whom the courts presume to be credible (generally, police officers and "citizen informants"). *Schmid v. State,* 615 P.2d 565, 576 (Alaska 1980); *Gustafson v. State,* 854 P.2d 751, 756–57 (Alaska App.1993); *Effenbeck v. State,* 700 P.2d 811, 813 (Alaska App.1985).

■ In the present appeal, the State argues that MS94–5 must be presumed to be a citizen informant because "Stam presented no evidence tending to establish that [MS94–5] was anything other than a citizen informant". The State's argument stands the *Aguilar /Spinelli* test on its head. It was not Stam's burden to prove MS94–5's lack of credibility; rather, it was the State's burden to show that MS94–5 was a credible informant. In particular, if MS94–5 is to be treated as a citizen informant, that citizen-informant status must be demonstrated by the information presented to the magistrate in the search warrant application. *Lloyd v. State,* 914 P.2d 1282, 1287–88 (Alaska App. 1996).

■ Generally speaking, an informant's status as either a "police informant" or a

"citizen informant" "turns on the nature of the informant's involvement with the incident being investigated and his or her motivation for coming to the authorities." *Gustafson*, 854 P.2d at 756. Stepp's affidavit does not provide much information about MS94–5. It appears that MS94–5 is a friend or associate of Stam's, but little else is revealed. Stepp's affidavit affirmatively asserts that MS94–5 has no criminal record, but the affidavit gives no information bearing on MS94–5's involvement in the case or MS94–5's possible motivation for coming forward.

The fact that MS94–5's identity is not revealed in Stepp's affidavit (despite Stepp's statement that he "is personally aware of MS94–5's identity") raises the possibility that MS94–5 is a "protected police 'stool pigeon', a person whose indiscretions are tolerated by the police ... in exchange for information and leads". Wayne R. LaFave, *Search and Seizure* (3d ed. 1996), § 3.3(c), Vol. 2, p. 126. Indeed, the second paragraph of Stepp's affidavit strongly suggests that MS94–5 is a traditional police informant:

> [P]art of [my] responsibilities [as an officer working for the Statewide Drug Enforcement Unit] is to coordinate confidential informants during the normal course of investigations[.] ... One such informant is designated as MS94–5.

For these reasons, we conclude that MS94–5 must be treated as a "police informant" rather than as a "citizen informant". The question then is whether Stepp's affidavit provides sufficient reason to believe that MS94–5 is a credible person.

■ Stepp independently corroborated MS94–5's information concerning the location and physical layout of Stam's property. However, our supreme court has held that corroboration of a police informant's description of a suspect's residence is not sufficient to establish the police informant's credibility. *Jones*, 706 P.2d at 325 ("[M]ere confirmation that Jones actually lived in the apartment indicated by [the informant] does not qualify as independent corroboration by the police."); *see Carter v. State*, 910 P.2d 619, 624 (Alaska App.1996) ("[C]orroboration of public facts or wholly innocuous details" cannot meet the *Aguilar/Spinelli* requirement); *see also*

*United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir.1993) (when an anonymous informant reported seeing a large amount of marijuana in the suspect's home, mere corroboration of the informant's description of the suspect's house and address was not sufficient); *United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir.1993) ("mere confirmation ... that a suspect lives at a particular location or drives a particular car does not provide any indication of criminal activity").

The State points out that the information obtained from Fish and Wildlife Officer Piepgrass appears to corroborate MS94–5's assertion that Stam no longer needed to fish because he was making so much money selling marijuana. According to Stepp's affidavit, Piepgrass told Stepp that "there was no sign of a fish wheel ... at Stam's homestead on the river this season" and that Stam "had, in the past, used a fish wheel".

Evidence that there was no fish wheel at Stam's homestead is probative only to the extent that the evidence concurrently establishes good reason to expect a fish wheel. Stepp's affidavit contains only the unadorned assertion that Stam had used a fish wheel at some unspecified time in the past. The affidavit contains no assertion that Stam formerly made his living by catching fish or that Stam habitually ran a fish wheel each summer. Without such evidence, MS94–5's assertion that Stam was not running a fish wheel amounted to little more than another of the publicly observable facts about the layout of Stam's property. Based on the meager contents of Stepp's affidavit, we conclude that the absence of a fish wheel at Stam's homestead provided only minimal corroboration of MS94–5's credibility.

Finally, the State relies on the fact that Trooper Barrick informed Stepp that he too had "received previous intelligence ... that John Stam was growing marijuana on the homestead at that location". We have recognized that the receipt of identical information from independent sources is a factor that can be used to corroborate an informant's tip. *Hugo v. State*, 900 P.2d 1199, 1202 (Alaska App.1995); *Lewis v. State*, 862 P.2d 181, 186 n. 5 (Alaska App.1993) ("For purposes of the *Aguilar/Spinelli* doctrine,

the veracity of a statement given by a police informant whose reliability is unknown may be established by a corroborating statement from another informant: Cross-corroboration among informants is a well-accepted method of demonstrating the validity of the information given.").

But in this case, Stepp's affidavit contains only a bare assertion that Trooper Barrick had, at some time in the past, received another report that Stam was growing marijuana at his homestead. Stepp's affidavit provides no details to flesh out this conclusory assertion. The affidavit describes Barrick's information only as police "intelligence". There is no indication of its source, no indication of the time or circumstances under which it was received.

The *Aguilar/Spinelli* rule is designed to protect citizens against the issuance of search warrants that are based solely on the uncorroborated assertions of police informants. This protection would mean little if a police informant could be deemed "corroborated" based merely on police assertions that they had heard similar rumors in the past. In the present case, the judge who issued the search warrant was given no details of the police "intelligence", nor did Stepp's affidavit provide any reason to credit this "intelligence".

In conclusion, we find that Officer Stepp's affidavit failed to establish probable cause for the issuance of the search warrant. The judgement of the superior court is therefore REVERSED.